JOHN CLARENCE V. STATE OF NEBRASKA.

FILED MARCH 10, 1910. No. 16,310.

1. Criminal Law: EVIDENCE: ADMISSIBILITY. Upon a trial of an accused under a charge of murder, certain witnesses testified that they were in a corncrib shoveling corn into a sheller, and that at the time of the tragedy they were standing upon corn in the crib not yet removed, and, looking through an opening between the boards constituting the wall of the crib, witnessed the affair which resulted in the death of the deceased, their testimony being favorable to the defendant and his theory of self-defense. At the time of the shooting of the deceased there was a team and wagon and the corn sheller near the crib, which were thereafter removed, and the boards, between which the witnesses testified they saw the transaction, were knocked or taken off. Over four months thereafter the state procured persons to go to the place in question, who, over the objection of the accused, testified that they caused a team and wagon to be placed where they were informed the team and wagon had stood, and they procured boards to be placed where the boards were said to have formerly been, and that by standing on the floor of the granary they could not see the spot where it was said the tragedy occurred. The admission of the testimony, without proof that the conditions as existing at the time of the affray had been restored, *held* erroneous.

2. Homicide: INSTRUCTIONS: SELF-DEFENSE. "When, in a trial for murder, the defendant produces evidence tending to justify the killing on the ground of self-defense, an instruction which limits the right of self-defense to one in the lawful pursuit of his business is erroneous." *Hans v. State*, 72 Neb. 288.

3. ———: ———. In an instruction given to the jury upon a trial of one charged with the crime of murder, the law of murder in the first and second degrees and manslaughter was fully explained. Upon the request of the state, the court later instructed the jury that "a malicious killing, although done upon a sudden quarrel and in the heat of passion, is, at least, murder in the second degree." *Held*, That, in view of the instructions already given and of the use of the words "at least", the instruction was prejudicial error.

4. Criminal Law: INSTRUCTIONS: PROVINCE OF JURY. The jury are the sole judges of what is shown by the testimony of the witnesses. An instruction which informs the jury that certain facts are shown by a witness, naming him, and quoting his testimony, is erroneous as usurping the function of the jury. It is for them to

say whether the testimony of the witness establishes the fact detailed.

5. ———: ———: Materiality of Evidence. It is error to submit the question of the materiality of evidence to the jury before whom the case is being tried.

Error to the district court for Cass county: Harvey D. Travis, Judge. *Reversed.*

*Byron Clark, W. A. Robertson* and *John C. Watson,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

Reese, C. J.

An information was filed in the district court for Cass county charging plaintiff in error with the crime of murder in the first degree in killing John P. Thacker, in said county on the 15th day of January, 1909, by shooting him with a pistol, or revolver, then held by plaintiff in error. A jury trial was had, beginning June 2, 1909, which resulted in a verdict finding plaintiff in error guilty of murder in the second degree. A motion for a new trial was filed, which was overruled, and plaintiff in error was sentenced to imprisonment in the state penitentiary for the term of 14 years, and that he pay the costs of prosecution. The cause is removed to this court by proceedings in error for review. The bill of exceptions is very voluminous and the testimony of the witnesses quite conflicting. In view of the fact that there will probably be another trial, it is not deemed proper that we should review the facts, except so far as it may be necessary to present the questions to be here passed upon.

It is shown by the evidence that plaintiff in error was a young man of about the age of 29 years at the time of the tragedy, five feet six inches in height, weight 160 pounds, and is, and has been for a number of years, so crippled in his left leg as to render it practically useless,

requiring him to use a cane in order to enable him to walk. The deceased was a man of about middle age, weighing from 220 to 240 pounds, of full vigor and strength, and of, at least, resolute disposition. The relations between plaintiff in error and deceased were friendly. On the day of the tragedy a number of people, including plaintiff in error and the deceased, were at the farm of a Mr. Darrough, shelling corn from the crib, and hauling it away. There were four persons in the crib, or granary, shoveling corn into the sheller. One person was in a wagon nearby. A difficulty arose between one of the shovelers and the person in the wagon. Their relation to each other was that of uncle and nephew. Feeling ran high between them, and, while no assault was committed, their language and actions were quite demonstrative. At that time plaintiff in error was standing at a water tank nearby watering a span of mules. The deceased then appeared upon the scene, apparently rather unexpectedly, and called, in language not necessary to be repeated here, suggesting to the man in the wagon that he administer punishment to the young man with whom he was quarreling, and started in their direction. At that moment plaintiff in error, who was leaning upon his cane and holding his mules, called to the deceased, in language more forcible than polite, to keep out of the difficulty between the uncle and nephew. Deceased then started toward plaintiff in error, and the tragedy soon thereafter followed. Up to this point there is little, if any, conflict in the testimony. From that time on the testimony is somewhat conflicting. At some period in the difficulty which followed, deceased picked up a board or club and struck plaintiff in error on the head two or more blows. Plaintiff in error raised his cane, a heavy hickory stick which he had carried and used for a number of years, and by the use of which he was enabled to walk, either in defense or counter attack, when deceased took it from him and struck him a heavy blow with it. By some means the cane was dropped, and deceased seized plaintiff in error around the body from

behind and somewhat to the left side, when they fell to
the ground, deceased falling on top of plaintiff in error.
At some period in the encounter the deceased was shot
three times by plaintiff in error, the wounds thereby in-
flicted causing his death some five days thereafter. Dur-
ing the time of the difficulty, three of the shovelers in the
crib looked out through the cracks or openings between
the boards forming the side of the crib, and some of them
testified to having seen the whole, or practically all, of
the contest between deceased and plaintiff in error. Their
version of the affair, upon the witness-stand, was largely,
if not entirely, in favor of the theory of the defense, and
to the effect that plaintiff in error acted upon the de-
fensive, and would probably be excused, or possibly jus-
tified, in protecting himself with his pistol. There seems
to be no doubt of his inability to do so of his own strength.
Soon after the tragedy photographs were taken of the
corncrib and surroundings, some teams, wagons and
sheller being placed as at the time of the difficulty.

The trouble occurred on the 15th day of January, 1909.
The trial was commenced on the 2d day of June following.
Upon the trial the state disputed the testimony of the wit-
nesses who claimed to have seen and heard the difficulty
from their position in the crib, and, the better to enable
them to do so, as was supposed, caused persons to go to
the crib in question, either immediately before or during
the trial, and inspect the place for the purpose of ascer-
taining whether persons so situated could have observed
what was done. The teams, wagons and sheller had all
been removed, as well as the boards which formed the
cracks through which it was claimed the witnesses had
looked. A team and wagon was placed where it was *said*
a team and wagon had stood, and boards were nailed on
the studding where it was said some of the boards had
been before being removed. We are unable to find any
proof in the bill of exceptions by any one present at the
time of the tragedy that the original condition was in any
way restored. The witnesses who made the inspection

testified that, in looking out at the place where the board was nailed up by them, or in their presence, and the team and wagon being placed where they were supposed to have stood, no one could have seen the parties involved at the place where they were said to have had the altercation and contest. So far as we are able to discover, this evidence was wholly incompetent for want of sufficient foundation, was inadmissible, and highly prejudicial. The vice of this evidence also affirmatively appears. It was shown that there was corn in the crib at the time of the tragedy, and that the witnesses stood upon the corn and were thus elevated so that they could see, but at the later time, referred to by the impeaching witnesses, the corn had all been removed and there was none in the crib.

As a part of the ninth instruction given by the court to the jury, the court said: "The jury are instructed that the rule of law on the subject of self-defense is this: Where a man, in the lawful pursuit of his business, is attacked, and when, from the nature of the attack, there is reasonable ground to believe there is a design to take his life, or to do him great bodily harm, and the party attacked does so believe, then the killing of his assailant under such circumstances will be excusable or justifiable homicide, although it should afterward appear that no injury was intended and no reasonable danger existed." We do not copy the whole of the instruction on account of its length. It must be enough to say that, in the main, with the exception of the portion quoted, the law of self-defense is correctly stated. But, as must appear to any one reading it, the whole is in effect made to depend upon whether the accused was "in the lawful pursuit of his business." This portion of the instruction is condemned in *Hans v. State,* 72 Neb. 288. In the syllabus it is said: "When, in a trial for murder, the defendant produces evidence tending to justify the killing on the ground of self-defense, an instruction which limits the right of self-defense to one in the lawful pursuit of his business is erroneous." There can be no doubt but that, considering

the physical condition of the two parties and the testimony of practically all the witnesses, there was at least some evidence "tending to justify the killing on the ground of self-defense."

Objection is made to the eighth instruction, given upon the request of the state. It is as follows: "The jury are instructed that a malicious killing, although done upon a sudden quarrel and in the heat of passion, is, at least, murder in the second degree." Were the words "at least" eliminated, the instruction might not be objectionable, although the statement of abstract principles of law in an instruction is not to be encouraged, but rather condemned. It requires but little reflection for one to see that the instruction as formed might be to the prejudice of a person on trial. The use of the words "at least" would naturally suggest to the mind of a juror that it might also be something greater. If so, the crime of murder in the first degree would be suggested, for that is the next step upward in the grade of the crime. In the seventh and eighth instructions given by the court upon its own motion the law of manslaughter is fully explained, and a return to the subject in the language of the instruction above quoted was not necessary or in any way demanded. Under the circumstances we cannot approve of the instruction.

An error was committed in giving the twenty-second instruction, given upon the court's own motion. It is as follows: "You are instructed that the testimony of George Cole shows that the defendant stated to him 'that if Thacker came into the field where he was and threatened to kill him, he would kill him (meaning Thacker, the deceased)', also that he stated 'that if Thacker had done that way with him he wouldn't only have drawn a gun but he would have used it.' You are instructed that the foregoing language of the defendant does not constitute a threat, but is admitted as showing the condition of mind of the defendant which he entertained toward Thacker at that time, and is to be weighed by you in determining

whether or not the shooting of Thacker by the defendant was malicious. You are the sole judges of the weight of this testimony and whether or not it has any bearing upon the case." As to what the testimony of the witness *"shows"* was for the determination of the jury alone. By the language of the instruction the consideration of the weight of Cole's testimony was entirely withdrawn from the jury, and they were thereby required to take the testimony of the witness as true. It was within the province of the jury to ignore his evidence *in toto,* if for any sufficient reason they believed he testified to an untruth. It is true that at the close of the instruction the jury were informed that they were the sole judges of the weight of the testimony, but, as they had been instructed as to what was *shown* by it, the natural inference would be that they must accept the fact as established, and decide for themselves as to "whether or not it has any bearing upon the case", which was for the court, and not the jury. It is for the court to decide if proffered testimony may have any bearing upon the case, and for the jury to decide whether or not it is to be believed, or, stated otherwise, how much weight or credence is to be given to what the witness has said. An instruction telling the jury what effect must be given to the evidence of a witness is erroneous. *Coon v. McClure,* 53 Neb. 622; *Murphey v. Virgin,* 47 Neb. 692; 1 Sackett (Brickwood), Instructions to Juries (3d ed.) sec. 182. Other questions are presented by the assignment of errors and briefs, but as they may not arise upon another trial they will not be noticed here.

It is strenuously objected that the evidence is not sufficient to support the verdict. As we have hereinbefore stated, it is not deemed necessary to discuss this question as another trial may not present the same facts and circumstances.

For the errors referred to, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.