MARGARET HICKEY, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

1 N. W. (2d) 304

FILED DECEMBER 12, 1941. No. 31229.

*Kennedy, Holland, DeLacy & Svoboda,* for appellant.

*Paul P. Massey* and *John C. Mullen, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Plaintiff recovered a judgment in the sum of $12,000 against the defendant for personal injuries received in an accident. Defendant appeals and presents two propositions: First, the trial court erred in not submitting the question of defendant's negligence to the jury; second, the verdict was excessive and the result of passion and prejudice.

Plaintiff, an unmarried woman, was born in 1894. At the time of the accident and for many years prior thereto she was an employee of the Union Pacific Railroad in a clerical position. Her work required considerable use of her right hand in writing, typing, and the use of adding machines and other mechanical office equipment. Her salary at the time of the accident was $139.20 a month or $1,670.40 a year.

The accident occurred on the morning of February 10, 1939. The weather was clear; the temperature eight degrees below zero. About six inches of snow was on the ground, and the streets were slippery. This condition existed generally in the city of Omaha; evidence as to the specific condition at the scene of the accident was not shown. Plaintiff was a fare-paying passenger in a motor bus operated by the defendant. The bus was crowded; the windows frosted. Plaintiff was standing up in the bus when it collided with a street car operated by the defendant. Further details of the accident are not shown, except that there was an unobstructed view of the point where the accident occurred for a block in the direction from which the bus approached. There was a stop sign governing the street car when entering the intersection where the accident occurred.

Plaintiff's injury consisted of a comminuted fracture of the upper right arm. She was taken to the hospital, where the customary effort was made to set the broken bone, including the application of weights to the hand to pull the

arm out so that the bones could be properly placed. This was not successful. Next an operation was performed, the arm opened, a steel plate placed in the arm, fastened with screws to the bone, and a band placed around the fracture to hold the loose part of bone in place. This was successful, and the bone healed in proper position. A second operation was performed some weeks later and the metal materials removed. The wound healed properly leaving, however, a scar on the arm almost seven inches in length. Following these operations the entire arm and hand were in casts for long periods of time. After the last operation healed it was discovered that plaintiff had what is described as a wrist drop. This was caused by the controlling nerve becoming encased in the callus that formed when the bone was healed. It did not respond to treatment, and finally plaintiff went to Mayo's at Rochester, where another operation was performed, the nerve removed from the callus and its function restored. The hand during these months was necessarily not used. Then began the treatments of the hand, 121 in number, extending over a period of several months. These consisted of a heat and pressure treatment intended to restore the normal use of the hand. The pain and suffering from the injury, operations, anæsthetics, and treatments are described in the record as severe. There appears to be some restriction in the use of the arm, but no deformity, unless the scar comes within that classification. Plaintiff has become nervous and has lost weight. The evidence was that her hand and fingers had been restored in their use some 50 per cent., but that she could not close the hand so as to "make a fist." The only dispute in the evidence was as to the permanency of the disability. Plaintiff called three doctors who testified that there would be little, if any, further recovery; that further treatments would be useless; and that only use of the hand could help.

Plaintiff was under the care of the medical department of the railroad company. The chief surgeon had performed the operation on her arm and had in large part treated her case. Plaintiff did not call him. Defendant called him

as its only witness. He was a bit more hopeful of further, if not complete, recovery in the use of her hand. On this issue the jury must be held to have resolved the question of the permanency of the injury in favor of plaintiff.

Under the operating rules of the railroad, plaintiff could not go back to work until released by the chief surgeon, and he had not restored her to a working status at the time of the trial. The evidence is not at all convincing that she could ever fully perform her former tasks, nor is there assurance of other employment if she failed to satisfactorily do her work, when and if restored to duty.

The trial was had approximately two years after the accident.

The railroad furnished the medical and hospital care so that expense is not involved in this litigation.

Plaintiff alleged that the collision and injuries were the direct and proximate result of defendant's negligence. Defendant by answer admitted plaintiff's status as a fare-paying passenger and the collision, and denied generally all other allegations.

The court instructed the jury in substance that they should find for the plaintiff if she had established by a preponderance of the evidence, first, an injury in consequence of the collision, and, second, a pecuniary damage. Defendant argues that the burden is upon the plaintiff to establish negligence; that only an inference of negligence arises from the fact of the collision, sufficient to take the case to the jury without further proof; and that the defendant could either (1) proceed in an effort to explain away the inference or (2) allow the case to be submitted on plaintiff's testimony. In the instant case the defendant followed the latter course. Defendant admits that it owed the plaintiff the highest degree of care consistent with the practical operation of the bus on which she was riding. Plaintiff had established sufficient facts to take her case to the jury. Defendant admits that an inference of negligence arose against it. Defendant's evidence went solely to the question of the extent of plaintiff's injuries and the result-

ing amount of her damage. There is no question here of the shifting of the burden of proof, but only whether there was presented a question of negligence to be submitted to the jury.

The question is, where an inference of negligence arises from the uncontradicted established facts, is it necessary for the court to require that the jury find whether or not there was negligence? Wigmore states the rule as follows: "The question of negligence goes to the jury unless the facts are undisputed and fair-minded or reasonable men could draw but one inference from them." 9 Wigmore, Evidence (3d ed.) 518, sec. 2552(c). Here defendant admits that the inference is against it. See, also, same authority, pp. 270 to 282, secs. 2485, 2486, 2487, for a discussion of this question generally. This court has stated the rule as follows: "Where different minds may draw different inferences or conclusions from the facts proved, or if there is a conflict in the evidence, the matter at issue must be submitted to the jury to determine; but, where the evidence is undisputed, and but one reasonable inference can be drawn from the facts, the question is one of law for the court." *Craig v. Chicago, St. P., M. & O. R. Co.,* 97 Neb. 426, 150 N. W. 374. See 64 C. J. 338.

The evidence was undisputed from which an admitted inference of negligence arises. There was no issue of negligence to present to the jury.

The defendant next complains that the court refused to give two requested instructions to the jury to the effect that defendant as a common carrier for hire was required to exercise the highest degree of skill and care in the operation of its bus, but that it was not an insurer of defendant's safety; and that the burden of proof was upon the plaintiff to show that her injuries were the proximate result of defendant's negligence and that that burden never shifts. In the light of the decision just reached as to the issue of negligence, it is apparent that the situation did not call for the giving of either of these requested instructions.

Defendant in its brief and at the bar of this court vigor-

ously urges that the verdict is excessive, so much so as to indicate that it is the result of passion and prejudice, and asks that the judgment be reversed or a remittitur be ordered. The statute provides that a new trial shall be granted for excessive damages appearing to have been given under the influence of passion or prejudice. Comp. St. 1929, sec. 20-1142. "Passion and prejudice will not be presumed to have influenced the minds of the jurors." 4 C. J. 774. Passion and prejudice must appear to have influenced the verdict of the jury. The verdict in this case does not appear to have been so influenced.

Is the verdict excessive? Defendant cites a series of cases wherein this court has ordered remittiturs and argues that this verdict by analogy should be reduced. How the court arrived at its conclusion in those cases is not clearly demonstrated. Plaintiff cites other cases in which verdicts larger than this have been sustained and argues that by analogy the verdict here is too small and certainly not excessive.

If we were to follow these two arguments to their logical conclusion, it would result in the court classifying injuries, establishing a pattern for juries, and fixing a ceiling above which and a floor below which verdicts should not go. This we obviously have no right to do. In cases where the error cannot be demonstrated, should we order the increase of a verdict which we believe to be too small? To do so would be just as reasonable as to order a remittitur in a case where we think the verdict is excessive.

The difficulty encountered in following either of these arguments is that, in these actions, no two cases are the same in their results to the party injured and no two juries are the same. It cannot be denied that the determination of the amount to be recovered by the injured party is primarily a jury question.

Approximately a third of the verdict may be accounted for in loss of salary for two years. Defendant says that it is then being required to pay over $8,000 for a 50 per cent. loss in use of the right hand. This is not a correct

statement of the evidence. There was the shock, the pain and the suffering from the injury, the effort to properly place the bones, three operations, long periods of hospitalization and longer periods when the arm was in the cast with continued pain and suffering throughout this period; the 121 painful treatments following the third operation; the physical appearance of a crippled hand and a scarred arm; and the partial permanent loss of earning capacity in the work for which plaintiff was fitted. The ability of the plaintiff to use the training of her brain in competitive industry depends to a large part upon the efficiency with which she can use her right hand. These damages suffered by an unmarried, self-supporting woman were all before the jury for their consideration. It is for the jury to say under proper instructions as to the law what the compensation shall be.

That, the jury have done in this case, and we cannot with assurance say that their conclusion is wrong.

The rule is: "A verdict awarding damages for personal injuries will not be disturbed as being excessive, unless this court can say as a matter of law that the amount thereof is excessive." *Banta v. McChesney*, 127 Neb. 764, 257 N. W. 68.

The judgment of the district court is

AFFIRMED.