WILLIAM V. R. DAFOE, BY HIS FATHER AND NEXT FRIEND, ALBERT N. DAFOE, APPELLEE, v. LEONARD RAYMOND GRANTSKI ET AL., APPELLANTS.

9 N. W. (2d) 488

FILED MAY 7, 1943. No. 31546.

Chambers, Holland & Locke, for appellants.

Perry, Van Pelt & Marti and Dafoe & Dafoe, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

Plaintiff, as father and next friend, sued to recover damages for injuries caused to his son when he was struck by an automobile driven by the defendant Grantski. Grantski was an employee of the defendant Night and Day Garage, a copartnership, composed of the defendants Shurtleff and O'Shea-Rogers Motor Company. The latter company was in turn a copartnership composed of the defendants O'Shea and Rogers. It was alleged that Grantski was acting within the scope of his employment and authority when the accident occurred. Defendants answered jointly. Trial was had. At the close of the trial the court sustained a motion to dismiss as to the defendant O'Shea-Rogers Motor Company, and overruled like motions as to the defendants Night and Day Garage and Grantski. Plaintiff recovered a judgment for $11,000. Defendants Grantski and Night and Day Garage appeal and assign as errors the refusal of the trial court to direct a verdict as to the Night and Day Garage; the giving of three instructions; and that the verdict is excessive and the result of passion and prejudice. We affirm the judgment of the trial court.

The evidence will be stated in two sections, that which relates to the liability of the defendant Night and Day Garage and that which relates to the injuries to plaintiff's son.

The Night and Day Garage operates a commercial and storage garage in the center of the block on the south side of M street between Thirteenth and Fourteenth streets in the city of Lincoln. The O'Shea-Rogers Motor Company

operates a garage in a separate establishment at Fourteenth and M streets.

The Night and Day Garage operates an around the clock business, and on the night in question had among its employees on duty one Schmidt, its foreman, and the defendant Grantski. The O'Shea-Rogers Motor Company does not operate at night and telephone calls for it are, through secretarial service, transferred to and received by Night and Day Garage. The wrecker car of O'Shea-Rogers is at night placed in the Night and Day Garage so that it may be sent out on call from there. Also repair business is, by this secretarial service, directed to or delivered to O'Shea-Rogers. On the night involved one McMeen, an employee of O'Shea-Rogers, had reported for duty at the Night and Day Garage, and, no calls for wrecker service coming in, he had gone to a show and returned to the Night and Day Garage about 10 p. m. McMeen was there when about 10:30 p. m., a call came for the delivering by Night and Day Garage of a Coryell automobile, then in the garage, to Thirty-third and South streets in Lincoln. Schmidt told Grantski to get the car and he did, bringing it to the main floor of the garage. McMeen was preparing to go home and that Schmidt knew. Schmidt testified that he told Grantski to take the car to Thirty-third and South streets, a location south and east of the garage. Grantski testified that Schmidt gave him a slip of paper on which he was told his destination was written; that he did not look at it, but folded it and held it in his mouth as he left the garage; that he had not looked at it before the accident, did not know when he left the garage where he was to take the car, and did not at the time of the trial know what was written on the paper or where he was supposed to take the car. McMeen got in the car and left with Grantski. Schmidt knew that McMeen was going to "ride along with him (Grantski) home," but Schmidt testified that he did not know where McMeen lived. McMeen lived at 843 North Twenty-second street, a place north and east of the Night and Day Garage. Defendants' evidence is that McMeen gave Grantski direc-

tions after he got in the car. With Grantski driving the car, the two men left the garage, went east to Fourteenth and M streets, and there turned and proceeded north on Fourteenth street, in a course toward McMeen's home. The accident happened at Fourteenth and S streets, six blocks north of the Night and Day Garage.

On the following day Grantski gave a written signed statement to plaintiff and his attorney describing how the accident happened. In that statement, near the beginning, he said: "I work for the Day and Night Garage and on Sunday evening Vern Schmidt in charge of the Day and Night Garage told me to take a Coryell car and go out north on 14th St. and pick up one of the boys who also works for the Day and Night Garage and bring him to work. After that I was to take Coryell's car out to their representative Rolling who had called asking it be delivered to him." Grantski, called as a witness for the defendants, was asked on cross-examination about the statement, identified his signature to it, stated that he had read it over before signing it, identified his initials appearing where corrections had been made, and the plaintiff then offered certain parts of it in evidence. Defendants' attorney then examined as to foundation and announced: "We have no objection to you reading the entire statement." Plaintiff's attorney then examined the witness further and read one sentence from the statement. Defendants' attorney then said: "I have no objection to reading the whole statement." Plaintiff's attorney then read another sentence and said: "We will just offer the entire statement, exhibit No. 9, and you have no objection?" Defendants' attorney answered: "No, that is fair to the witness." The exhibit was then received in evidence and read to the jury. Defendants' attorney apparently had not examined the exhibit and did not know it contained the statement above quoted. He then, for all defendants except Grantski, objected to the introduction in evidence of that portion above quoted as not binding upon the other defendants. The trial court overruled the objection.

Grantski then, on the witness-stand, denied that he had made the statement above quoted, said that he had no such instructions and Schmidt testified that he had given no such instructions.

The first assignment of error is that the trial court erred in refusing to direct a verdict for the Night and Day Garage. This is based on the proposition that there was no evidence that Grantski was acting in the course of his employment at the time of the accident; that the statement of Grantski above referred to in exhibit No. 9 is not binding upon the Night and Day Garage, the employer; that declarations by the employee as to the existence or extent of his authority are not admissible against the principal to prove either the existence or extent of the agency; that the statement was admissible only against Grantski and cannot be considered as substantive evidence against the employer.

That Grantski was an employee of the Night and Day Garage is not disputed. The part of the statement here quoted was not offered for the purposes of impeachment, and had not been referred to in the examination prior to the repeated statements of defendants' counsel that they had no objection to the entire statement being read to the jury. The evidence was before the jury in effect by stipulation of all defendants, and without objection, when defendants (except Grantski) objected to its introduction.

The reason for the rule that such statements are not admissible to prove the existence or the extent of an agency is that they violate the hearsay rule. 2 Am. Jur. 352, sec. 445; 4 Wigmore, Evidence (3d ed.) sec. 1078.

Under a somewhat similar circumstance, where statements that were hearsay were admitted without objection we held: "Hearsay evidence tending to prove a material fact, if admitted without objection, may sustain a finding of the existence of that fact." And, " 'Hearsay testimony admitted without objection may sustain a finding based solely thereon.' *Sheibley v. Nelson,* 84 Neb. 393." *Maul v. Iowa-Nebraska Light & Power Co.,* 137 Neb. 128, 288

N. W. 532. See, also, *Combs v. Owens Motor Co.*, 121 Neb. 5, 235 N. W. 682. It necessarily follows that defendant Night and Day Garage was not entitled to a dismissal for the reasons advanced.

Defendants next assign as error the giving of certain parts of instruction No. 9, which is as follows: "You are instructed that an employer is not responsible for the negligence of an employee unless the employee was, at the time, performing some duty within the course and scope of his employment. Therefore, in this case, you are instructed that before the plaintiff could recover against Grantski's employer, Nite & Day Garage, and members of that partnership, you must find from a preponderance of the evidence that, at the time of the collision, Grantski was performing some duty for his employer in the course and scope of his employment. The evidence is undisputed that the night foreman of the Nite & Day Garage had directed Grantski to deliver a Coryell car to such owner. You are instructed that Grantski's employer would be liable for damages resulting from Grantski's negligence only while he was in the performance of his duties in that regard or following directions given by his employers or foreman. The employer is not relieved of responsibility for such employee's negligence committed while such employee is making a slight deviation or departure from strict compliance with his master's business. However, the employer or master would not be responsible for the negligent act of the employee if the employee makes such a substantial deviation or departure from his employer's business as to amount, for the time being, to an abandonment of such duty."

The first criticism goes to that part of the fourth sentence of the instruction "or following directions given by his employers or foreman" for the assigned reason that it was too broad and should have been, but was not, limited by "on the employer's business." We see no merit to this contention. It is clear, from those parts of the instruction that defendants say are correct, that the jury were told before the plaintiff could recover they must find that "at the

time of the collision, Grantski was performing some duty for his employer."

The next criticism of instruction No. 9 goes to the sentence: "The employer is not relieved of responsibility for such employee's negligence committed while such employee is making a slight deviation or departure from strict compliance with his master's business."

There can be no question but that Grantski left the garage in the Coryell car on a mission for his employer. The evidence would sustain any one of three findings. First that Grantski was instructed to go "north on 14th St. and pick up one of the boys" who worked for the Night and Day Garage, "bring him to work" and then deliver the car. The testimony of Grantski that at the time he left the garage and at the time of the accident he did not know where he was to deliver the car supports such a conclusion. Second, that Grantski was to take the car to Thirty-third and South streets, but in doing so was in the meantime, and on the same trip, to take McMeen home. Although McMeen was not an employee of the Night and Day Garage, he was an employee of O'Shea-Rogers and on duty at and going home from the garage. That Schmidt, the foreman, knew, and at least impliedly consented that he be taken home by Grantski on the trip to deliver the car. In view of the weather conditions (set out later herein), and the close business relationship between Night and Day Garage and O'Shea-Rogers, and the employee relationship where McMeen, as an employee of O'Shea-Rogers, received his instructions as to wrecker service from Schmidt, an employee of Night and Day Garage, a conclusion that such an arrangement existed was not unreasonable. In either of these two situations it is clear that the route taken by Grantski was not out of bounds. Third, there is the testimony of Schmidt, denied by Grantski, that he orally told Grantski to take the car to Thirty-third and South, with no evidence as to any instructions as to the route to be followed, and no indication as to where or how he was to get rid of McMeen.

Under these circumstances the most that may be said is that the evidence showed that the master's business required the delivery of the car ultimately to the Coryells at Thirty-third and South, and that that was the primary business of the trip.

This court has adopted the rule that where, in driving an automobile, the deviation by a servant from the direct route to a destination is slight and not unusual the court may, as a matter of law, determine that the servant was still executing his master's business; where the deviation is very marked and unusual, the court may determine, as a matter of law, that the servant was not on the master's business; cases falling between these extremes will be regarded as involving a question of fact to be left to the jury. *Ryne v. Liebers Farm Equipment Co.*, 107 Neb. 454, 186 N. W. 358; *Dirks v. Ensign Omnibus & Transfer Co.*, 107 Neb. 556, 186 N. W. 525; *Galpin v. Fisher*, 109 Neb. 700, 192 N. W. 205.

"The general rule of law applicable to this class of cases is accurately and concisely stated in *Stone v. Hills*, 45 Conn. 44, 29 Am. Rep. 635, and is as follows:

" 'For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible.'

"Whether the act was done in the execution of the master's business, within the scope of his employment, is a question of fact. The rule cannot aid in the determination of the fact. Each case must be determined with a view to the surrounding facts and circumstances, the character of the employment and the nature of the wrongful act. Whether the act was or was not such as to be within the scope of his employment is, ordinarily, one of fact for the

determination of the jury. 18 R. C. L. 795, sec. 254." *La Fleur v. Poesch*, 126 Neb. 263, 275, 252 N. W. 902. See, also, 22 A. L. R. 1404; 45 A. L. R. 482; 68 A. L. R. 1055; 80 A. L. R. 727; 122 A. L. R. 863.

Under the circumstances of this case, a jury question was presented and the instruction was not erroneous.

The defendants next assign as error the giving of instruction No. 10, which is as follows: "You are instructed that a servant or employee may on the same trip combine both his own and his master's or employer's business, and if one of the intended results is to further the master's or employer's business the master or employer is liable."

Defendants do not contend that the instruction contains an erroneous statement of the law, and admit that it is taken from *Vanderlippe v. Midwest Studios*, 137 Neb. 289, 289 N. W. 341. The contention is that it is a statement of the combined trip rule and it conflicts with instruction No. 9 which was on the deviation rule, that the two cannot be consistenly given in the same case, and that there is no evidence calling for the instruction. The trial court was not required to instruct only on the theory most favorable to defendants. Defendants' evidence, as has been pointed out, would have sustained a finding that Grantski was going on a mission for his employer and also on a mission to take McMeen home (which defendants contend was a personal mission), and that the same trip was to accomplish both purposes. That there may be, in such a trip, a slight departure from the route whereon the master's service is to be performed, without affecting the application of the rule is recognized in *Luke v. St. Paul Mercury Indemnity Co.*, 140 Neb. 557, 300 N. W. 577.

The giving of instruction No. 10 was not error.

Defendants complain of that part of instruction No. 12 which permitted the jury to allow "fair and reasonable damages resulting from any loss of earnings, if any, in the future from any permanent impairment, if any, as proved and shown by the evidence."

The evidence is that before the injury plaintiff's son was

20 years of age, unmarried, successfully pursuing his studies as a pre-law student at the University of Nebraska, was a leader in school activities, had taken and passed examinations for the Army Air service; was in the full possession of his physical and mental powers, was in part working his way through school, and had done work as a common laborer and for three months had earned $100 a month as a chainman on a surveying crew for the state. From the very nature of the case whether or not one would earn anything in the future cannot be definitely determined. However, it must be assumed that a young man under these circumstances could have and would have earned something. It may not be assumed that a 20-year-old boy, ambitious to be a lawyer, will achieve that end and never be called upon to earn a livelihood by physical labor. Permitting the jury to include something for loss of future earnings was proper.

Finally defendants contend that the award of $11,000 damages was grossly excessive and requires a reversal. In addition to the facts just recited about the injured boy, this requires a statement of the facts surrounding the accident and the extent of the injury.

The accident occurred on the night of January 4, 1942. There was a heavy snow on the ground. The streets were "icy." The temperature was below zero. The car driven by Grantski swerved in its course so that the left rear bumper caught the injured boy in the lower right leg, entered the leg, making a ragged wound some 12 or 14 inches in length, apparently hooked around the large muscle known as the tibialis anticus, pulled it out and apart, threw the boy to the pavement fracturing his right shoulder, bruising his chest and causing other bruises and wounds. He lay for a few moments on the pavement bleeding profusely, then was placed in a taxicab. First aid was administered, and he was then put in an ambulance and taken to a hospital where an operation was performed. Pneumonia followed. He was dangerously ill for several days. He suffered intensive pain for some time. He required the regular attendance of a surgeon, a physician, and trained

nurses. He was in the hospital until the 17th of February. The value of the services rendered is shown to have been $1,201.20, and by assignment is recoverable in this action.

During his period of hospitalization an infection developed in the back of his leg requiring an operation and draining. Some permanent injury appears there. The tibialis anticus muscle was so injured that it could not be connected and its two sections are four inches apart. This muscle is the one that is used to elevate the foot. Plaintiff cannot lift his foot above the right angle position, cannot walk on his heel and is required to take exercises constantly to strengthen the remaining muscles and prevent the foot drawing downward and out of position. He is unable to enter the air service as a flyer. His physicians fix the extent of the loss of his leg at 50 per cent. for ordinary civilian function and 100 per cent. for army function, state that it will not get better, and may get worse. The possibility of a tendon transplant operation to replace the lost muscle was discussed but not recommended by his physicians unless he persisted in his ambition to enter the air corps. The operation is one difficult to perform, is performed only by a few surgeons largely in the east, would probably cost from $900 to $1,400 and require three to four weeks' hospitalization and the chances of success only 50 per cent. good. At the time of the trial, six months after the accident, his shoulder had healed and caused him no pain. His leg was still draining and some swelling existed, but it was stated it would fully heal in probably two months. He walks without pain.

Defendants, citing cases, vigorously assert that the judgment is so excessive that a reversal is required. Plaintiff, citing cases, and with equal vigor asserts that the judgment is not excessive and should be affirmed.

We were presented with a somewhat similar situation in *Hickey v. Omaha & C. B. Street Ry. Co.*, 140 Neb. 665, 1 N. W. (2d) 304. What we said there is applicable here. We said: "The statute provides that a new trial shall be granted for excessive damages appearing to have been given un-

der the influence of passion or prejudice. Comp. St. 1929, sec. 20-1142. 'Passion and prejudice will not be presumed to have influenced the minds of the jurors.' 4 C. J. 774. Passion and prejudice must appear to have influenced the verdict of the jury. The verdict in this case does not appear to have been so influenced."

Commenting upon a similar argument of counsel we said:

"If we were to follow these two arguments to their logical conclusion, it would result in the court classifying injuries, establishing a pattern for juries, and fixing a ceiling above which and a floor below which verdicts should not go. This we obviously have no right to do. In cases where the error cannot be demonstrated, should we order the increase of a verdict which we believe to be too small? To do so would be just as reasonable as to order a remittitur in a case where we think the verdict is excessive.

"The difficulty encountered in following either of these arguments is that, in these actions, no two cases are the same in their results to the party injured and no two juries are the same. It cannot be denied that the determination of the amount to be recovered by the injured party is primarily a jury question."

The damages suffered by plaintiff's son were all before the jury for their consideration. In the *Hickey* case, *supra*, we said: "It is for the jury to say under proper instructions as to the law what the compensation shall be. That, the jury have done in this case, and we cannot with assurance say that their conclusion is wrong. The rule is: 'A verdict awarding damages for personal injuries will not be disturbed as being excessive, unless this court can say as a matter of law that the amount thereof is excessive.' *Banta v. McChesney*, 127 Neb. 764, 257 N. W. 68."

The judgment of the district court is affirmed.

AFFIRMED.