RICHARD CRECELIUS, A MINOR, BY R. ALLEN CRECELIUS, HIS FATHER AND NEXT FRIEND, APPELLEE, V. GAMBLE-SKOGMO, INCORPORATED, ET AL., APPELLANTS.

13 N. W. 2d 627

FILED MARCH 10, 1944. No. 31662.

*Morrow & Miller, Floyd E. Wright* and *Cline, Williams & Wright,* for appellants.

*Bertrand V. Tibbels, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action by Richard Crecelius, a minor, by R. Al-

len Crecelius, his father and next friend, plaintiff and appellee, against Gamble-Skogmo, Incorporated, a corporation, and Robert R. Robertson, defendants and appellants. The action is for damages for personal injuries claimed to have been sustained by plaintiff on the 24th day of July, 1940, in the city of Scottsbluff, Scotts Bluff county, Nebraska, on account of alleged negligence of the defendant, Robertson, who was at the time employed by, and engaged in the operation of a truck owned by, the defendant Gamble-Skogmo, Incorporated.

The case was tried to a jury and on February 22, 1943, a verdict was returned in favor of plaintiff and against the defendants for $20,000. Judgment was rendered on the verdict. From this judgment the defendants have appealed to this court.

Many of the pertinent facts in the case are not disputed. Among them are these: West Twentieth street is a street extending east and west in the city of Scottsbluff, Nebraska, and in the vicinity involved here it has a width of approximately 42 feet. Intersecting Twentieth street are avenues "C" and "D." Avenue "D" is one block west of avenue "C." On July 24, 1940, the defendant, Robertson, in due course of his employment, was operating a Chevrolet pick-up truck in the business of the defendant, Gamble-Skogmo, Incorporated. Shortly after 5:00 p. m. while Robertson was operating the truck in an easterly direction on Twentieth street between avenues "C" and "D" he ran into the plaintiff, a minor of the age of four years. The plaintiff, at the time, was crossing Twentieth street. From the south side he was running across the street in a northeasterly direction. The right front fender struck plaintiff and as a result he came to rest some distance eastward from the point of collision and near the center of Twentieth street. That he was injured is not questioned. The character and extent of his injuries are in dispute.

Plaintiff by his petition contends that the collision came about because of negligence in substantially the following particulars: The truck was equipped and operated with de-

ficient, faulty and improper brakes; the truck was operated at an excessive rate of speed in violation of the ordinances of the city of Scottsbluff; the truck was operated without proper control; Robertson failed to steer the truck to right or left so as to avoid striking plaintiff although he had sufficient opportunity so to do.

In the answer the allegations of negligence are generally denied and the defendants further allege substantially that Robertson was confronted with an emergency for which he was in nowise responsible, whereby he was unable, in the exercise of ordinary care under the circumstances, to avoid striking the plaintiff.

The first question raised by the appeal is the sufficiency of the evidence to justify the submission of negligence of the defendants to a jury. The determination of this question must be agreeable to two rules.

The first is that in considering a motion for a directed verdict this court must, for the purpose of a decision thereon, treat it as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the facts in evidence. *Fairman v. Cook,* 142 Neb. 893, 8 N. W. 2d 315.

The second is that where different minds may reasonably draw different conclusions from the evidence in a law action the question to be decided is for the jury. *Craig v. Chicago, St. P., M. & O. R. Co.,* 97 Neb. 426, 150 N. W. 374; *Hickey v. Omaha & C. B. Street Ry. Co.,* 140 Neb. 665, 1 N. W. 2d 304; *Fulcher v. Ike,* 142 Neb. 418, 6 N. W. 2d 610.

In the light of these rules it becomes necessary to examine the evidence. The helpful evidence in this connection is found for the most part, if not entirely, in the testimony of plaintiff's witness, Dan Goodro, as aided by distances shown by the plat of the area of Twentieth street between avenues "C" and "D." Goodro and the defendant, Robertson, were the only eyewitnesses to the accident. The pertinent part

of Goodro's testimony is the following: "Q. (163) Just tell us what happened as you drove along there? A. * * * I turned around and I seen Dickie, and there was another boy there with the bunch: I seen him start running across the street and I seen a pick-up coming. * * * Q. (166) Mr. Goodro, just tell us what you saw there? A. Well, I saw the pick-up coming and I saw the boy start from the curb. Q. (167) Then what happened? A. Well, then the boy got hit. * * * Q. (170) Where was the pick-up truck? Where was the pick-up truck when Dickie left the curb? A. It looked to me like it was entered D at the intersection. Q. (171) Did you watch it then from the time it entered D until the time it hit Dickie? A. Yes. * * * Q. (191) Now, which did you see first, Dickie leave the curb or the pick-up? A. Well, I seen them both about the same time. Dickie started to run. * * * Q. (358) When the Crecelius boy started across the street, in which direction did he run? A. Northeast. Q. (359) He was going in a northeasterly direction? A. Across towards the alley. * * * Q. (375) Can you tell this jury about exactly where that truck was at the time the boy left the curb? A. He was coming into the intersection at D when this boy left the curb. * * * Q. (411) Now, about how far west of the extended line of the north alley was it that Dickie left the curb? A. How far west of the north alley? Q. (412) Yes. How far west of the extended line of the north alley? If you extended that line across the street, how far west of the alley would it be? A. Of the north alley? Q. (413) Yes, of the north alley? A. I would say it would be about thirty-five feet." On the matter of speed of the truck this witness testified that it was traveling at a rate of about 45 miles per hour.

If this testimony is true then by reference to the plat which is in evidence plaintiff started across the street from a point about 35 feet west of the alley which alley is 140 feet east of avenue "D." At the time plaintiff started across Robertson was at least 105 feet to the west. The witness also testified that there was no traffic and no parked automobiles to obstruct Robertson's full view of the street.

At the time of the accident the brakes on the truck were greatly out of adjustment. The left front had no braking pressure, the right front had 75 pounds, the right rear 300 pounds and the left rear 600 pounds.

On these facts there was clearly a question of negligence to be submitted to the jury. The jury had a right to consider whether or not Robertson was negligent in not, under the circumstances, having the truck under such control as to be able to avoid striking the plaintiff by stopping, turning to the left or to the right, or in not seeing plaintiff in time to avoid striking him. It is true that Robertson's version of the incidents varies greatly from that of Goodro. He says that plaintiff ran out from behind an automobile which was parked on the south side of the street so closely in front of him that he did not even have time to apply his brakes before striking plaintiff and that there was no possibility of avoiding him although he was traveling only between 20 and 25 miles per hour.

This does not present a question for the court but is a disputed question of fact for the jury, since as to it, we are unable to say that different minds could not reasonably draw different conclusions from this evidence.

Appellants contend that it was error to permit Goodro to give his opinion as to the rate of speed Robertson was driving at the time of the accident on the ground that he did not have reasonable time, means, distance or opportunity to formulate a basis for an opinion. They contend that the admission of this opinion is violative of the rule announced in the second syllabus point in *Bergendahl v. Rabeler,* 133 Neb. 699, 276 N. W. 673, and followed in *Knoche v. Pease Grain & Seed Co.,* 134 Neb. 130, 277 N. W. 798; *Mierendorf v. Saalfeld,* 138 Neb. 876, 295 N. W. 901; *Fairman v. Cook, supra,* as follows: "Where it appears that a witness had no reasonable time, means, distance or opportunity to formulate a basis for an opinion as to the speed of a car, the testimony of such witness is insufficient to sustain a finding of excessive speed in the absence of other evidence on the subject."

The rule is a sound one but in the negative sense in which it is stated it can have no application here. The testimony of the witness discloses that he did have a basis for his opinion. He first saw the truck a distance of about a half block away, observed it from that time until it came to a stop. It was coming toward him and at least in part his estimate was based on the time taken to close the gap between. The accuracy of such estimates or opinions is open to question but being admissible as evidence the determination is one for the jury and not the court.

On February 6, 1943, more than two and one-half years after the accident, the brakes of a Chevrolet pick-up truck similar to the one involved in the accident were adjusted so that the pressure on the wheels was the same as that on the defendant's truck at the time of the accident and driven to the scene of the accident where a police officer made some experiments. Apparently the purpose was to show in what distance the truck could be stopped by the use of brakes going at different speeds, although this is not quite clear. The testimony adduced was as to length of skid marks rather than stoppage distances.

Over objection of the defendants the court permitted witnesses to give the results of the experiments, and photographs of skid marks produced on the pavement as a result of the experiments were admitted in evidence.

With regard to the matter of admission of evidence of experiments this court has said: "While experiments are sometimes admitted to illustrate a given subject, we are not aware of any rule that permits onlookers to testify as to the result, without laying the foundation and showing that the result of the experiment can be relied on as a substantive fact. This means that, as a foundation for this testimony, it must be shown that the person who makes the experiment is competent to do so; that the apparatus used was of the kind and in the condition suitable for the experiment, and that the experiment was honestly and fairly made. Without these facts established, 'the result' is without probative force." *Omaha Street Ry. Co. v. Larson*, 70 Neb. 591,

97 N. W. 824. See, also, *Clarence v. State,* 86 Neb. 210, 125 N. W. 540; *Amsbary v. Grays Harbor Ry. & L. Co.,* 78 Wash. 379, 139 Pac. 46, 8 A. L. R. 1; *Kohlhagen v. Cardwell,* 93 Or. 610, 184 Pac. 261, 8 A. L. R. 11; *Ragan v. MacGill,* 134 Or. 408, 292 Pac. 1094, 72 A. L. R. 860; 9 Blashfield, Cyclopedia of Automobile Law and Practice (Part 2) (Perm. ed.) 619-620; 20 Am. Jur. 627-632; 32 C. J. S. 440-443.

This court recognizing the difficulties attending an offer of evidence of illustrative experiments has adopted the rule that in such cases a discretion is conferred upon the trial court and that unless there is a clear abuse of discretion a judgment will not be reversed on account of the admission or rejection of such evidence. In *City of Ord v. Nash,* 50 Neb. 335, 69 N. W. 964, it was said: "Some discretion is conferred upon the trial court in receiving evidence of experiments for the purpose of contradicting or corroborating other witnesses, and in order to authorize the reversal of a judgment on account of the admission or rejection of such evidence there must have been a clear abuse of discretion." Other cases adhering to this principle are: *Davis v. State,* 51 Neb. 301, 70 N. W. 984; *Lillie v. State,* 72 Neb. 228, 100 N. W. 316; *Falkinburg v. Prudential Ins. Co.,* 132 Neb. 831, 273 N. W. 478.

From an examination of this record we are unable to say that this evidence with its foundation was or was not of value to the jury in a determination of the question to which it related. Certainly the jury were entitled to the benefit of every probative fact available and under our system of jurisprudence, moreover of government, the determination of issue of fact in jury cases is within the exclusive province of the jury. Thus conclusively under our system of government we presume that juries are capable of weighing the facts and rendering just decisions.

We are unable to say on the record that the court abused its discretion in the admission of the evidence of these experiments.

Three doctors were called by plaintiff to testify as ex-

perts with regard to his condition. Each of these doctors had previously examined him, had obtained a history from the father and had examined the hospital records made while the plaintiff was in the hospital, which records were in evidence. Each doctor testified to his findings and the history given. Hypothetical questions were propounded to each of the doctors. With this background each doctor was permitted to express his opinion as to the condition of plaintiff, past, present and future. The qualifications of these witnesses were sufficient, the matters inquired about were pertinent to the issues being tried, the histories were admissible, the hypotheses embraced the essential features of the evidence and the answers responded to the proper subject matter of inquiry.

Assignments of error Nos. 13, 14, 15, 16, 17, 18, 20 and 21 challenge the propriety of certain of the testimony of the three doctors mentioned in this connection and with this foundation. We find no error in the admission of this testimony.

We next direct our attention to assignment of error No. 19. Under this assignment one doctor was allowed to give it as his opinion that the accident would have the effect of shortening plaintiff's normal life expectancy by 25 years. This evidence was doubtless admissible. 32 C. J. S. 238, sec. 534; 22 C. J. 661; 20 Am. Jur. 722, sec. 862, and 735, sec. 872. Assuming however that there was no sufficient foundation for its admission this evidence could not have been prejudicial to defendant.

The reason why this is true is obvious. If it had any effect at all it would have been to reduce rather than increase the amount of plaintiff's recovery since while plaintiff was entitled to his pecuniary loss based on his life expectancy before the injury, the recovery for future mental and physical suffering would depend upon expectancy in his injured condition. The rule of law in this connection has been announced in *Webb v. Omaha & S. I. R. Co.*, 101 Neb. 596, 164 N. W. 564, as follows: "In an action to recover damages for personal injuries which are permanent and have impaired

the earning capacity of the plaintiff, damages awarded for pecuniary loss by reason of his decreased earning power should be based on the probable expectancy of plaintiff's life immediately before the injury, but damages awarded for future mental and physical suffering should be considered in connection with the probable expectancy of plaintiff's life in his injured condition at the time of the trial."

Complaint is made that in violation of statute (Comp. St. 1929, secs. 20-1111 - 20-1115) the court erroneously permitted the bailiff to answer a question propounded by the jury, the point being that this was in violation of the statutory requirement that juries shall be instructed in writing. In this connection the record discloses that on February 22, 1943, while the jury were deliberating they requested that the bailiff inquire of the judge in substance whether or not a recovery by plaintiff would be subject to income tax. He made the inquiry of the judge. The judge advised the bailiff that he would give no instruction on that subject. This reply was communicated to the jury by the bailiff.

We observe nothing in this which could have prejudiced either one of the parties. However, communications between the trial judge and jury after retirement of the jury should be controlled by a high degree of circumspection. We commend the practice approved in *Wiegand v. Lincoln Traction Co.*, 123 Neb. 766, 244 N. W. 298.

Appellant contends that there was error in certain instructions given by the court. The first one discussed in the brief is instruction No. 7. This instruction related to the fixation of damages by the jury. In the instruction the following language is found: "In fixing the amount of such damages you should consider the character and extent of plaintiff's injuries and of their probable duration; * * * ." It is the contention that a jury in assessing future damages may consider only reasonable certainty and not probability.

As authority for its position attention is directed to *Burkamp v. Roberts Sanitary Dairy*, 117 Neb. 60, 219 N. W. 805; *Fisher v. Trester*, 119 Neb. 529, 229 N. W. 901; *Schwarting v. Ogram*, 123 Neb. 76, 242 N. W. 273; *Jensen*

*v. Omaha & C. B. Street Ry. Co.,* 128 Neb. 21, 257 N. W. 257.

In *Burkamp v. Roberts Sanitary Dairy, supra,* it is stated: "By instruction No. 16 upon the measure of damages, the jury were told that they might consider 'any physical or mental pain or anguish which the plaintiff has suffered because of his injuries, or any pain that he still suffers, or will probably suffer in the future.' This was error in so far as it permitted the jury to allow damages for pain which the plaintiff will 'probably suffer in the future.' This language is too indefinite and conjectural. The only future pain and suffering which the jury is entitled to consider is such as the evidence shows with reasonable certainty he will experience."

From a careful examination of this instruction and others accompanying it we conclude that the contention of appellant is without merit. This instruction requires that the jury shall "consider the character and extent of plaintiff's injuries and of their probable duration." This is directive and properly so. Instruction No. 10, which must be read with instruction No. 7, informs the jury as to the weight of evidence required under the directive of No. 7. It is as follows: "You are instructed that to warrant a recovery for a permanent injury the future extent of the injury must be shown with reasonable certainty, a mere conjecture or even a probability of the future disability which may never exist is not sufficient." Considering the instructions together we are of the opinion that the jury were not improperly instructed in this regard and that the manner of instructing could not be calculated to mislead.

We find no error in the giving of instructions Nos. 15, 18 and 23, the other instructions discussed in the brief. There was ample evidence upon which to submit the matters therein involved for determination by the jury. No complaint is made that these instructions do not embody correct principles of law.

The remaining error complained of is that the verdict is excessive. It is contended that the verdict is so clearly ex-

cessive as to indicate that it was the result of passion and prejudice on the part of the jury. If this is apparent from the record then it is the duty of the court to set it aside and grant a new trial for that reason.

This court, however, can properly do this only when from the record it appears that there is either no evidence to support the verdict or that reasonable minds cannot come to any other conclusion than that the verdict is the result of passion and prejudice. Any other attitude would amount to an invasion of the province of the jury.

The record having been examined in this light we are unable to say that the verdict was the result of passion and prejudice, and is excessive.

Three doctors testified on behalf of the plaintiff and gave their findings and opinions as to his condition, past, present and future, and, without detailing it, if this testimony is to be believed, plaintiff received severe and painful injuries, the end results of which have been and will be disabling and progressively so during the life of plaintiff. In just what degree is none too clear. On the other hand the defendants called three doctors whose testimony indicated that there had been a complete recovery and that there are and will be no after effects. The jury, whose prerogative it was to consider the credibility of the witnesses, could accept either viewpoint and, as is apparent, having accepted that of plaintiff's witnesses, this court is unable to say that they are wrong. Reversal cannot be granted on this ground.

The judgment of the district court is affirmed.

AFFIRMED.