THOMAS R. P. STOCKER, APPELLANT, V. RALPH ROACH, APPELLEE.

300 N. W. 627

FILED OCTOBER 31, 1941. No. 31175.

*Chambers, Holland & Locke, Ralph W. Ford, Herbert A. Ronin* and *Thomas R. P. Stocker,* for appellant.

*L. R. Doyle, Sam C. Zimmerman* and *Lloyd E. Peterson,* contra.

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and CHAPPELL and ELLIS, District Judges.

ELLIS, District Judge.

In this action the plaintiff below, appellant here, sought to recover his damages resulting from personal injuries to himself, his wife, and damage to his automobile.

The defendant filed a cross-petition by which he sought to recover damages for personal injuries.

Upon trial the jury returned a verdict in favor of the defendant on his cross-petition in the sum of $3,327.50.

The accident happened on the 30th day of May, 1940, on east and west highway No. 2 about 2 miles east of Palmyra at about 10 o'clock p. m. The road at this point was flat and slightly down grade from a point approximately 500 feet east of the place of the accident. The road surface was what is called "armor coat," which is constructed by spraying the surface with a black oil on which is spread a coating of sand. The road was between 22 and 24 feet in width with earthen shoulders on each side, the width of which is in dispute, the evidence varying from 18 inches to 5 feet.

The weather was clear, the road dry, there was no moon and it was very dark. In other words, driving conditions were normal for the date and hour and nature made no contribution to produce the accident.

The plaintiff's theory, which the evidence in his behalf tended to support, was that while driving his 1933 two-door Ford westward its lights suddenly failed. He brought the car to a stop and then started it again, moving it westward and to the right so that, when stopped the second time, its right wheels were off the mat. The plaintiff got out of the car on the driver's side and his wife got out on the right side. Both walked back or eastward along the north edge of the mat 30 or 40 feet when they saw the illumination from lights of a car approaching from the east. Plaintiff testified that he had a lighted flashlight in his hand which he waved up and down. That without slackening its speed the approaching car kept on coming and when a short distance away veered a little to the north, struck Mrs. Stocker, knocking her into the ditch on the north side

of the road, then struck Mr. Stocker, knocking him into the same ditch, and then struck plaintiff's car, that the accident happened only two or three minutes after the plaintiff stopped his car.

The first motorist on the scene came from the east and testified that he saw flashlights from a point two blocks east and saw the Stocker car from about a block away.

The evidence is undisputed that the Stocker car had an almost vertical rear window, an unbroken reflector type tail-light lens and a bright metal standard type bumper on the rear. The evidence is undisputed that the car had been cleaned, waxed and polished the day before the accident and had not been driven in mud or over wet roads during the intervening time.

The evidence likewise is undisputed that the left front part of defendant's car struck the right rear part of plaintiff's car and that defendant's car came to rest after the collision on its left side in the north ditch with its front end to the east. The plaintiff's car after the collision rested on the mat north of center line.

The defendant testified that he was driving a 1936 Ford tudor; that it was in good mechanical condition, with lights and brakes working all right, that the lights were regular Ford lights, were on the regular driving position and were satisfactory to drive with. He further testified that he was driving about 35 miles an hour when he saw an object right in the center of the road about 100 to 150 feet ahead of him. On cross-examination he testified that this object was 200 feet ahead when he first saw it. He said that he looked ahead the minute he saw the object and saw no sign of a car coming; that in a matter of seconds he saw that it was a lady with her hand in the air; that he kept his eyes on her until he got by her, when, looking ahead, he saw a car a few feet ahead of him; that he pulled to the north but could not avoid it.

He further testified that the left wheels of the other car were 12 to 16 inches north of the white center line of the highway. He denied that there was a warning by flash-

light or otherwise. He said he saw Mr. Stocker and that he was standing next to the left rear fender of his car. He denied striking either Mr. or Mrs. Stocker. He said he could not say what color the Stocker car was, but that its color appeared to be a good deal the same color as the road. On cross-examination, when asked if he slackened his speed after seeing the object in the road, he answered, "Very little," and "Slightly, but not to any great extent; no." That after seeing the lady he did not look to see what was on down the highway. He did not apply his brakes. He admitted that the Stocker car was not over 30 or 40 feet beyond where Mrs. Stocker was standing.

At the close of defendant's case the plaintiff moved for a directed verdict on defendant's cross-petition. The motion was then overruled and on being renewed at the close of all the evidence was again overruled. These rulings of the trial court are among the errors assigned here.

The plaintiff contends that on the evidence the defendant, as a matter of law, was guilty of negligence in such a degree as to bar his right to recover on his cross-petition. In support of his contention the plaintiff cites *Hendren v. Hill,* 131 Neb. 163, 267 N. W. 340; *Redwelski v. Omaha & C. B. Street R. Co.,* 137 Neb. 681, 290 N. W. 904; *Fischer v. Megan,* 138 Neb. 420, 293 N. W. 287; *LaFleur v. Poesch,* 126 Neb. 263, 252 N. W. 902, and other cases.

Responding, the defendant contends that the rule of the above mentioned cases does not apply when the object is of a color similar to that of the roadway or blends with the color of the roadway and cites *Tutsch v. Omaha Structural Steel Works,* 110 Neb. 585, 194 N. W. 731; *Day v. Metropolitan Utilities District,* 115 Neb. 711, 214 N. W. 647; *Adamek v. Tilford,* 125 Neb. 139, 249 N. W. 300.

We have reviewed all of these cases cited by the defendant and do not think the factual situation involved in any of them is such as to make them controlling in the situation before us or of any value as precedents herein. All of these involve situations where the general rule did not apply be-

cause of the inherent character of the obstruction or defect in the highway.

In *Hendren v. Hill, supra,* we said: "It is the duty of an automobile driver, in driving a car in the nighttime, to keep such an outlook ahead that he will see an obstruction as soon as it is illuminated by his lights, and it is his duty to have his car under such control that he can stop to avoid a collision with an object within the area lighted by his lamps."

The law has been stated as follows: "A motorist who drives his automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his headlights is negligent as a matter of law." *Redwelski v. Omaha & C. B. Street R. Co.,* 290 N. W. 904 (137 Neb. 681). See *Fischer v. Megan, supra,* and cases cited.

In most of the cases of collision at night it is claimed by the driver of the colliding vehicle that he had no warning of the obstruction, did not see it until he was quite close to it and because of speed was unable to stop notwithstanding some effort to do so.

In the principal case we have the admission of the defendant that while moving at only 35 miles an hour when 100 or 200 feet away he saw an object in the road and that in a matter of seconds he saw that it was a lady with upraised hand. Notwithstanding what he then saw and was aware of, he did not slacken his speed or apply his brakes. His testimony is that not over 40 feet beyond the point where the lady was standing was the car with which he collided, to his injury, but that he did not see it until he had passed the lady. Accepting for the moment that he did not see anything beyond Mrs. Stocker until he had passed her, it seems to us to be clear that if he had slackened his speed, as common prudence would dictate, he would have been in a position to avoid the collision. Such a course would not only have afforded more time to ascertain what was ahead of him but would have enabled him to stop quicker in event there was need to do so. From

his own testimony it appears that he had good brakes but did not use them at all. '

If this court should decline to hold the defendant's conduct to be negligent, the court would be in the anomalous position of holding that failure to see an object within range of a driver's lights, or failure to so drive or control a car that the driver can avoid collision with obstacles appearing within range of his lights, constitutes negligence, but that failure to exercise *any care* after being aware of an obstacle, if not a warning, is not negligence.

A motorist who sees anything upon the highway at night which is abnormal and in itself a warning and takes no precaution by way of reducing speed, or otherwise, is guilty, as a matter of law, of more than slight negligence which will bar his recovery for damage contributed to by his lack of care.

It necessarily follows that we are unwilling to accept the defendant's testimony and theory that after he saw Mrs. Stocker (who, according to the evidence, was dressed in black with a light collar) he kept his eyes on her and saw nothing but her until he had passed her, notwithstanding that almost directly in line with her stood a car with shiny finish, reflector tail-light lens and bright metal bumper. To do so would violate common knowledge and experience and give judicial sanction to the fiction that useful human vision, so vital in negotiating modern traffic, is limited to a vertical plane of the approximate width of a human being, revealing nothing in immediate proximity latterly or closely and directly beyond.

The defendant seeks to avoid the legal effect of his conduct by invoking the rule, as stated by the defendant, that, where "a person is placed by the negligence of another in a situation of peril, his or her attempt to escape danger, even by doing an act which is also dangerous and from which injury also results, is not contributory negligence, such as will prevent him or her from recovering for an injury if the attempt be such as a person acting with ordinary prudence might under the circumstances do." In stating

the rule the defendant omits the essential element which must always be present to justify its application, namely, that the dangerous situation must not have been contributed to by the fault of the person seeking to invoke it.

"The extension of that rule is also to the effect that one cannot claim the benefit of the doctrine where the emergency was brought about by the negligent act of the party seeking to invoke it. The rule is applicable only when a person is confronted by such an emergency, he having been placed in such a position by the exercise of ordinary care." *Sheehy v. Abboud,* 126 Neb. 554, 253 N. W. 683. We cannot say that one who observes a person on the highway with hand upraised in warning and wholly ignores such a warning, with the result that he is unable to avoid a collision, is without fault. The rule obviously can have no application here.

Where the evidence establishes that a cross-petitioner was guilty of negligence more than slight, it becomes a question for the court, and it is the duty of the court to direct a verdict against him on his cross-petition. See *Klement v. Lindell,* 139 Neb. 540, 298 N. W. 137, and cases cited.

The trial court erred in not sustaining plaintiff's motion for a directed verdict on defendant's cross-petition and the cause must be reversed and remanded, with instructions to do so.

Only because it may afford some explanation of the jury's verdict and for the further reason that both parties have devoted considerable space to it in their briefs, we will discuss briefly instruction No. 18, which is as follows: "You are instructed that the mere fact that an accident occurred resulting in injury to plaintiff and to defendant raises no presumption that either were to blame or that either should recover damages. Accidents sometimes occur without fault on the part of any one and such accidents are termed as unavoidable. If, from a consideration of all the evidence in this case, you believe that the accident was unavoidable, your verdict should be for the defendant."

In instruction No. 21 the court set forth the elements and measure of damages if the jury found "in favor of the plaintiff" and the same if they found "for the defendant." The plaintiff assigns as error the giving of instruction No. 18. We think it is quite apparent that the trial court, being at the moment unmindful of defendant's cross-petition, used a form of instruction whch would have been proper in the absence of a cross-petition. The error in the instruction is obvious and we think prejudicial to a degree that was not and could not be cured or overcome by other instructions.

There are numerous other assignments of error relating to rulings on evidence and the giving or refusal of instructions. We have considered them but do not consider it necessary to discuss them in view of the disposition of the case.

The cause is reversed and remanded, with instructions to enter judgment dismissing defendant's cross-petition and granting plaintiff a new trial of the issues presented by plaintiff's petition and defendant's answer.

REVERSED.