AMELIA FAIRMAN, APPELLANT, V. MERLYN J. COOK,
APPELLEE.

8 N. W. (2d) 315

FILED FEBRUARY 26, 1943.  No. 31462.

*F. E. Williams* and *Wright & Wright,* for appellant.

*Allen, Requartte & Wood, Bern R. Coulter* and *James L. Brown,* contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Morrill county by Amelia Fairman, mother and next friend of Leta Bentzinger, as plaintiff, and who is appellant in this court, against Merlyn J. Cook, as defendant, and who is appellee in this court, wherein she seeks to recover for Leta Bentzinger damages for personal injuries she sustained in

a car accident which she alleged was due to the gross negligence of the defendant while she was riding in his car. The defendant denies that he was guilty of negligence. At the close of plaintiff's case and after she had rested the motion of the defendant for a directed verdict was sustained. Plaintiff, as appellant, brings the matter here for a determination of the correctness of the ruling of the lower court.

In considering a motion for a directed verdict this court must, for the purpose of a decision thereon, treat it as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the facts in evidence. *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163.

Applying the foregoing rule to the evidence disclosed in the bill of exceptions and admissions in the pleadings, it appears that Leta Bentzinger, who will be referred to herein as appellant and in whose behalf this action is brought, was a fifteen-year-old girl and a student in the tenth grade of the Bridgeport public schools. Among other subjects, she was studying music, and on April 19, 1941, a district music contest was being held at Sidney, Nebraska, in which about 30 of the music students of the Bridgeport public schools, including appellant, were taking part and who were to leave from the schoolhouse in Bridgeport early that morning. The appellant, together with Dorothy Nelson, Katherine Coleman, and Deloris Robertson, were assigned to the car of the appellee who was the principal of the school and who with others had volunteered his car to transport the students to the music contest. These students had been assigned to his car by a notice posted on the bulletin board. Appellee was not teaching music nor was the appellant taking any courses under him.

When they left the schoolhouse that morning about 7:30 a. m., appellee was driving and the appellant with two of the other girls occupied the back seat, appellant being on

the right-hand side. When they left Bridgeport the weather was slightly chilly, a moderate wind was blowing, and there was sleet or mist in the air. A light frost quickly formed over the windows but visibility was good, a windshield wiper was working on the driver's side of the car, and the roadbed was in good condition. The car proceeded toward Sidney, Nebraska, at about 35 miles an hour. After traveling some 10 or 11 miles from Bridgeport, the car hit a snowdrift in the road and thereafter appellee reduced his speed. After they reached the junction of the Bridgeport-Broadwater roads and headed south toward Dalton, the snow kept getting worse and the wind more severe and after they came onto the Dalton flats the storm had materially increased in its severity until it had reached the proportions of a blizzard covering the glass with frost and snow so that the occupants could only see out where the windshield wiper was operating.

That same morning the Schultz car left Morrill, Nebraska, for the purpose of attending the same music contest at Sidney, proceeded through Scottsbluff until they reached the Bridgeport-Broadwater junction and turned south on the Dalton road and continued until at a point near Dalton they came upon a car crosswise in the road with snowdrifts on each side and with a car immediately opposite. At that time they were proceeding about 25 miles an hour and the visibility was between 25 to 40 feet. Mrs. Schultz's daughter, who was driving the car, upon seeing the car some 30 to 40 feet ahead stopped the car without slipping or skidding about one foot from the car that was crosswise in the road. After the car stopped Mrs. Schultz immediately got out and proceeded to go back of her car approximately ten feet and shortly thereafter observed appellee's car approaching through the storm about 25 feet from her at what she estimated was from 20 to 30 miles an hour. The oncoming car skidded sideways about 35 to 40 feet from the Schultz car, then straightened out, and then skidded sideways into the Schultz car breaking the end of the bumper, the light, the pins under the front seat, knocking

in the back of the Schultz car, and pushing it forward into a snowbank, which was about the depth of the running board, for a distance of about six feet. The brakes on the Schultz car were not set. The lower front side of the right door of the appellee's two-door sedan was caved in about six to eight inches shattering the front glass and leaving a part of the bumper from the Schultz car in the car. The appellee's car then straightened out and traveled forward so that when it stopped the car was even with the Schultz car and headed the same direction. In the interim between the Schultz car stopping and the accident, the car crosswise in front of the Schultz car had succeeded in getting out and was not in front of the car at the time of the accident. Appellant herein, although admitting she could not see out and that the speedometer of appellee's car was not working, estimated the speed of the car from 10 to 15 miles an hour and at another time at 25 miles an hour; the appellee's answer admitted it was going 15 to 20 miles an hour. After the accident both cars were driven to Dalton.

Under the pleadings and the evidence it appears that the appellant was, on the day of the accident, riding in the appellee's car as a guest and this action comes under the guest statute, section 39-1129, Comp. St. Supp. 1941. Therefore, in order for the appellant to recover, she must show that the appellee was, by a preponderance of the evidence, guilty of gross negligence in the driving of his car and the pertinent question is whether or not she has produced sufficient evidence that the matter should have been submitted to a jury.

This court said in *Morris v. Erskine*, 124 Neb. 754, 248 N. W. 96: "What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine."

"Gross negligence, within the meaning of section 39-1129, Comp. St. Supp. 1935 (1941), means negligence in a very high degree, or the absence of even slight care in the performance of a duty." *Lemon v. Hoffmark*, 132 Neb. 421, 272 N. W. 214.

The appellant cites and relies upon those cases commencing with *Roth v. Blomquist*, 117 Neb. 444, 220 N. W. 572, and including *Most v. Cedar County*, 126 Neb. 54, 252 N. W. 465, wherein the general rule is announced that, "It is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps." And in *Most v. Cedar County*, *supra*, we added: "And the rule applies to driving in the daytime where vision is shortened by storms or other physical conditions." On principle it would appear that the existence or presence of smoke, snow, fog, mist, blinding headlights or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances. *Anderson v. Byrd*, 133 Neb. 483, 275 N. W. 825; *Fischer v. Megan*, 138 Neb. 420, 293 N. W. 287. However, these cases are ordinary negligence cases and as we have often said the question as to what amounts to gross negligence in any given case must depend upon the facts and circumstances thereof. Likewise, with reference to section 39-1193 and section 39-11,101, Comp. St. Supp. 1941, setting forth rules of the road in regard to the operation of cars, while any violation thereof would be evidence of negligence, yet the question as to what amounts to gross negligence in any given case must depend upon the facts and circumstances thereof.

Inasmuch as the question of gross negligence depends on the facts of each individual case, let us examine the evidence in this case. From the pleadings and the evidence in this case the principal complaint against the appellee is

one of speed; therefore, let us examine the record on this subject. Taking first the evidence of Mrs. Schultz on this matter, it shows that she was about 10 feet back of her car when she saw appellee's car approach through the storm from about 25 feet away, travel the 25 feet toward her, then pass and travel about 10 feet and hit her car, all of which took just a moment of time during which she was in an excited and frightened condition. This comes clearly under the holding of this court in the case of *Bergendahl v. Rabeler*, 133 Neb. 699, 276 N. W. 673, where we held: "Where it appears that a witness had no reasonable time, means, distance, or opportunity to formulate a basis for an opinion as to the speed of a car, the testimony of such witness is insufficient to sustain a finding of excessive speed in the absence of other evidence on the subject." And in *Knoche v. Pease Grain & Seed Co.*, 134 Neb. 130, 277 N. W. 798: "Where it appears that a witness had no opportunity to formulate a basis for an opinion as to the speed of a motor vehicle, it is error to permit him to give an estimate." While the speed of an automobile is not a matter of exclusive expert knowledge or skill and any one with a knowledge of time and distance is a competent witness to give an estimate, however, such estimate must be based upon a reasonable time and opportunity to formulate a basis therefor which, under the evidence herein, this witness did not have.

What has been said with reference to the testimony of Mrs. Schultz as to the speed of appellee's car is likewise applicable to that of appellant. Her testimony shows that as they drove onto the Dalton flats snow and frost on the glass and the snow blowing outside made it impossible for her to see objects on the side of the road, that the speedometer was not working, that she could not tell the speed of the car, and that she judges the speed of cars as either slow or fast. Yet on cross-examination she testified to a speed of 25 miles an hour and in a deposition to a speed of from 10 to 15 miles an hour. Clearly this witness had neither opportunity nor means to formulate any basis for an

opinion as to the speed of the car and that her answers were either guesses or conjectures is shown by the wide variation in the speeds and is the very thing this rule is intended to prevent; namely, the basing of a verdict on conjectures or speculation.

These being the only two witnesses on speed, let us analyze the remaining evidence under the rule hereinbefore announced for the purpose of determining whether the case should have been submitted to a jury. The evidence discloses that appellee was driving his car toward Dalton and upon approaching the Schultz car he observed it at the first opportunity and was on the lookout, for it appears from the evidence that visibility was from 30 to 40 feet and at from 35 to 40 feet his car skidded the first time and it is a reasonable inference that the skid was from the application of the brakes. He was able to straighten out his car and then it skidded again and hit the Schultz car broadside moving it forward about six feet into a snowdrift that came up to the running board, there being no brakes set on the car. Appellee's car straightened out and continued forward as far as the front of the Schultz car. It would not appear from these facts that the appellee's car hit the other car with any great speed for the road was slippery at the place and the car neither tipped over nor skidded into the ditch, but stayed right side up and went forward a distance of only six feet more than the length of the other car. The appellee's answer admits a speed of 15 to 20 miles an hour, however, this was considerably less than the admitted speed of the Schultz car which was 25 miles an hour, yet it stopped in time to avoid hitting the car ahead, but it neither slid nor skidded. While appellee either knew or should have known of the slippery condition of the highway, yet traveling at a speed slower than another car that was able to stop at the same place within the same distance, but because of slipping he was not able to do so is undoubtedly evidence of negligence, but clearly insufficient to sustain a charge of gross negligence. As a matter of fact, under the law of the guest statute, we are satisfied that it would have

been error to have submitted the question of his gross negligence to a jury, for a verdict based thereon could not have been sustained.

We have not overlooked the principle of law that, where different minds might reasonably draw different conclusions as to the appellee's negligence, the matter should then be submitted to a jury, but as herein stated where the evidence in its most favorable light would not amount to gross negligence then the matter should not·be submitted to the jury and we find that the sustaining of the motion for a directed verdict by the lower court was right.

AFFIRMED.