WILLIAM L. ALLEN, APPELLANT, V. FRANCIS O. CLARK
ET AL., APPELLEES.

28 N. W. 2d 439

Filed July 11, 1947.    No. 32192.

*Seymour L. Smith, E. D. O'Sullivan, Fitzgerald &
Smith,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-
MORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

The plaintiff brought suit for personal injuries against
Francis O. Clark and the Blue Star Produce Company,
a corporation.   At the close of the plaintiff's evidence,
counsel for the Blue Star Produce Company moved for
a directed verdict.   This motion was sustained, and the
trial proceeded against Francis O. Clark as sole defend-
ant.   The jury returned a verdict for the defendant,
and the plaintiff appealed from the judgment entered
thereon.

The petition charged that the plaintiff, riding in the
back seat of a car, was the innocent victim of an auto-
mobile collision, and that the resultant injuries were

painful, serious, and permanent; that the defendant, Clark, negligently and carelessly operated his car at the rate of 50 miles an hour, in violation of an Omaha ordinance, and regardless of the icy condition of the road; and that the defendant failed to have his car under control, failed to keep a proper lookout for other cars, and was unable to stop his car before striking automobiles in his pathway. The petition set out the injuries suffered in the greatest detail, with hospital and medical charges.

The defendant, Clark, in his answer charged that the driver of the car in which the plaintiff, Allen, was riding followed too closely another car ahead of it; that upon the stalling of a truck ahead carelessly and negligently drove his car across the center of Thirteenth Street and stopped it there; and that the plaintiff and his driver, whose negligence is attributable to him, were guilty of negligence in so operating the car and losing control. "That after plaintiff's car became stalled, plaintiff carelessly and negligently remained therein, although he had ample time to get out of said car." The defendant denied that he was guilty of any negligence whatever.

Thereafter the plaintiff was given leave to amend his petition by setting out certain ordinances of the City of Omaha. The reply was a general denial.

A very brief statement of the facts will assist in understanding the legal questions involved. Both plaintiff and defendant were working at the bomber plant of the Glenn L. Martin Company, and each was on his way there to begin work at eight o'clock, and the accident occurred at about 7:30 a. m. A large number of cars were going south on Thirteenth Street, Omaha, where the accident occurred.

Also on Thirteenth Street at this same time, going south slowly, there was a very large truck of the Blue Star Produce Company, reaching several feet over into the passing lane. This street at the place of the accident is 54 feet wide between curbs, with a seven-foot

parking place on each side, and the remainder of the street divided into four ten-foot lanes, the outside lane on each side being the driving lane, the inside or center lane on each side being the passing lane. As the truck went up the long hill at this place, it changed gears and went slower and slower, holding up the traffic, and at the time of the accident it was barely moving; other witnesses even testified that it had stopped entirely.

Millard V. Robbins, Meteorologist in charge of the local office of the United States Weather Bureau, testified as to the weather on this morning of January 8, 1945. At 7:30 the temperature was 33 degrees and dropping fast, for at 9:30 it was only 16. A light snow-fall began at 6:38 and continued until 11:20 a. m. The sky was cloudy. There was a moderate fog at 8 o'clock. From 7:00 to 8:00 there was a high wind of 47 miles an hour.

It is shown that at the time of the accident, which was at about 7:30 a. m., it was still dark, being early in January, and all the cars were running with their lights on, the only exception being that some of the witnesses testified that they saw no light on the rear of the truck which was blocking the traffic. While it may have been snowing some at the time of the accident, the storm increased rapidly in intensity as shown by the falling temperature and the heavy snowstorm. The existing conditions are portrayed by exhibit No. 13, being a photograph taken while the Koessel car was being removed by a wrecker.

The hill at this point was about 1,400 feet long, and the accident happened a little more than half way to the top of the hill, at about the place where R Street would cross Thirteenth Street if it extended clear through.

The plaintiff, William L. Allen, was riding on the left-hand side of the rear seat of the car of W. A. Koessel, with two others in the rear seat and two in the front seat. These five men in this car were all employed at

the bomber plant. For about a year they had daily made the trip under an agreement by which each of the men drove his own car for one week, paying all of the expenses for that week, and carried the other four. No money changed hands. This happened to be Mr. Koessel's week. Under these facts, there was no such joint enterprise between them by which any negligence of Koessel could be imputed to the plaintiff. See Hofrichter v. Kiewit-Condon-Cunningham, 147 Neb. 224, 22 N. W. 2d 703.

Immediately before the accident the Koessel car was perhaps the second car behind the truck. The car ahead of the Koessel car turned to the left to go into the passing lane to go around the truck, and found the street icy toward the center, and it wobbled, for the heavy traffic had worn down the ice in the southbound driving lane so it was not slippery. To avoid hitting this car ahead of him, Koessel drove his car toward the southeast across the center of the road and into the driving lane for northbound traffic, of which there was little at the time of the accident, nearly all the traffic going south. This left only seven or eight feet between the front of his car and the curb on the east side of the road, and there Koessel stopped his car. One or two cars northbound went in front of him, one going over the curb to do it.

The testimony of plaintiff Allen was that he looked north, after the Koessel car had gone out of the lane of traffic on its side of the road and stopped, and saw defendant's car approaching when it was a block and a half away. He said that at that time it was out about twelve feet from the east curb, and it struck the Koessel car in the middle of the left side, jamming in the doors and leaving it facing south.

The plaintiff, Allen, was knocked unconscious, and recalled nothing until some time the next day in the Doctors Hospital, where he remained for 25 days, with both pelvic bones broken and many other injuries; so

that when he finally went back to work March 19, 1945, he had to quit work again August 1, 1945, because of ill health. He still suffered, at the time of the trial, from dizzy spells and severe headaches, pain in his back, and could not lift his left arm very far.

The testimony of Waldamar A. Koessel is that he is 44 years old, and was working as a disposal supervisor at the bomber plant. He was the owner and driver of the Nash car in which the plaintiff was riding at the time of the accident. When he left home that morning it was raining, but got colder right along. He was in the driving lane, and five or six cars ahead swung out into the passing lane to go ahead of the truck, which was about three feet over in the passing lane. When the car immediately ahead of him started to swing out, Koessel swung out farther to the east to give that car clearance, and his car finally stopped about eight or ten feet from the east curb, at an angle of 45 degrees, headed southeast. While standing there, the Clark car hit him a terrific crash and shoved his car forward about 18 to 20 feet and straightened it so that it was facing due south when it came to rest. Koessel was thrown into the windshield, and bounced back and could not open the doors, as the door was pushed in five or six inches on that side, but he helped get Allen out of his car.

Koessel testified that he first observed the Clark car coming when it was about two blocks away, and it looked as if he was making for the hole in front of him, but it hit his car, then hit the truck at about the left rear wheel.

On cross-examination he testified that on the side where there was no travel it was icy and on the other side it was slushy, the west side was pretty well "chewed up" all the way across from traffic. The moment witness turned to the left he found himself on ice, and instead of trying to brake too much to throw his car into a

spin he went across to the left side and stopped the car. The truck moved on slowly five or six feet.

Joseph W. Bachman, one of the passengers in the Koessel car, testified that after the car stopped three or four cars northbound were slowed down by the Koessel car, but a fourth one jumped the curb and got around them. He testified that the plaintiff, Allen, first called his attention to the defendant's car coming up on the wrong side of the road, astraddle the driving and passing lanes for northbound traffic, when it was 600 or 700 feet away. He watched it until it struck them about five seconds later. He estimated its speed at 50 miles an hour.

Another passenger in the Koessel car was Henry A. Franz. He also had his attention called to the Clark car when it was just starting up the hill about two blocks away. He estimated its speed at 45 miles an hour, and said it did not slacken its speed until it crashed into the Koessel car.

The defendant, Francis O. Clark, testified that he was 28 years old and driving his own car, with a man in the front seat and three women in the back seat, all of whom regularly made the trip with him. He said that it was misting and snowing a bit; and that he was driving in the southbound passing lane when he first saw the Koessel car standing sideways, and also the truck, when he was within 70 to 75 feet of them. He at once tried to stop, put on the brakes, but it was icy and "made a sled" out of the car, so he pumped his brakes up and down, trying to make the wheels hold, and ran into the Koessel car. Almost at that instant another car hit him in the rear and pushed him under the rear end of the truck, which had stopped, mashing the hood and radiator of his car.

The defendant, Clark, appears to have given a deposition after the accident in which he testified it was storming. He also made answer in the deposition that he first saw the truck just as he started up the hill, and that

he saw the Koessel car at the same time, but at the trial he insisted that he had gone up the hill a ways and first saw the Koessel car when it was only about 70 to 75 feet ahead of him. It appears from the evidence that there was ice, sufficient to skid the cars, only in the center of this highway, where it had not been worn off by heavy traffic.

On cross-examination defendant Clark testified that when he first saw the truck and the Koessel car he was going between 30 and 35 miles an hour. He had hydraulic brakes on his car. He put his pedal down about half way to the floorboards. "At first I shoved them down and left it there, but when it just made a sled out of my car, so then I started to pumping it so as to jar the car and make it break through the ice."

Witness Hightower was in the front seat with defendant Clark. He said he first saw the Koessel car and the truck when they were about 50 or 60 feet away. The truck was aligned north and south; the Koessel car was facing straight east. Clark applied the brakes but they did not seem to take effect, just made a sled out of the car, and it started sliding and slid right into the Koessel car, shoving it to the southeast, then it slid sideways. "It happened so quick, but I know we finally got to the truck." A part of the rear of the truck was through the windshield.

With this very brief summary of the nearly 700 pages of evidence as found in the bill of exceptions, we will examine the plaintiff's sixteen assignments of error, fourteen of which relate to the giving of, or refusing to give, certain instructions to the jury.

In his first assignment the plaintiff contends that it was prejudicial error for the court to give instruction No. 8, reading as follows: "You are instructed that it is the duty of an automobile driver in driving his car to keep such a look out ahead that he will see an obstruction or a vehicle as soon as it is illuminated by his lights, and it is his duty to have his car under such

control that he can stop it in time to avoid a collision with an object in the area lighted by his lights, under normal driving conditions.

This court said in Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572, 58 A. L. R. 1473: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps." See, also, Redwelski v. Omaha & C. B. Street Ry. Co., 137 Neb. 681, 290 N. W. 904; Fischer v. Megan, 138 Neb. 420, 293 N. W. 287; Nichols v. Havlat, 140 Neb. 723, 1 N. W. 2d 829; Anderson v. Robbins Incubator Co., 143 Neb. 40, 8 N. W. 2d 446. And in Most v. Cedar County, 126 Neb. 54, 252 N. W. 465, we added: "* * * and the rule applies to driving in the daytime where vision is shortened by storms or other physical conditions."

Now, in the case at bar, there was ice in the highway, where defendant was driving too fast to avoid the collision, but the existence of this ice might well have been anticipated by an ordinarily careful driver, for in a case in which smoke made it impossible to see another car, this court said: "In such case, the smoke is a condition which the jury should consider in connection with the other evidence in determining the question of negligence." Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825.

In our opinion, the addition of the last four words, "under normal driving conditions," in instruction No. 8 as given by the court, could not but confuse the jury. The evidence disclosed rain, then snow, rapidly falling temperature, strong wind, and an icy pavement. The jury would realize that these conditions on the morning in question made for anything but "normal driving conditions," and could draw the conclusion that these words were carefully placed there for some purpose by the court, and that in a measure it excused the de-

fendant for his inability to avoid a collision because of his negligence.

The correct applicable rule is that it is the duty of an automobile driver, in driving his car, to keep such a lookout ahead that he will see an obstruction or a vehicle as soon as it is illuminated by his lights, and it is his duty to have his car under such control, under the driving conditions then existing, that he can stop it in time to avoid a collision with an object in the area lighted by his lights. See Anderson v. Byrd, *supra;* Fischer v. Megan, *supra;* Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315.

The plaintiff assigns error in including in instruction No. 2, giving a synopsis of the pleadings, the following sentence: "3. That after plaintiff's car became stalled, plaintiff carelessly and negligently remained therein, although he had ample time to get out of said car."

This court has held that it is error, in setting out the summary of the pleadings in an abridged form, to set out from the answer any statement that is not supported by the evidence. In this case there was no evidence adduced showing any negligence on the part of the plaintiff, and therefore there was no such issue in the evidence, and it was error to make this statement to the jury.

This court has very recently said: "The proper method of presenting a case to the jury is a clear and concise statement by the court of those issues which find support in the evidence and not by substantially copying the pleadings of the parties and if, by doing the latter, it results in prejudice to the complaining party it is a sufficient ground for reversal." Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597.

"This court stated in Hutchinson v. Western Bridge & Construction Co., 97 Neb. 439, 150 N. W. 193, that it was reversible error to include in the instructions of the court allegations of fact found in the petition but

which had not been supported by any evidence." Merritt v. Ash Grove Lime & Portland Cement Co., 136 Neb. 52, 285 N. W. 97.

It is next charged that the court erred in giving instruction No. 11 to the jury, setting out the comparative negligence rule. This court finds that there was no evidence showing any negligence on the part of the plaintiff.

This court has repeatedly said that, where contributory negligence is pleaded as a defense, but there is no evidence to support such defense, it is prejudicial error to submit such issue to the jury. See Koehn v. City of Hastings, 114 Neb. 106, 206 N. W. 19; Andersen v. Omaha & C. B. Street Ry. Co., 116 Neb. 487, 218 N. W. 135.

Other assignments of error might be discussed at length, but we have reached the conclusion that the several prejudicial errors in the instructions heretofore discussed require a reversal of the judgment.

REVERSED AND REMANDED.

CHAPPELL, J., concurs in the result.