Carl C. McQUEEN, Appellant,

v.

NAVAJO FREIGHT LINES, INC.,
Appellee.

No. 16701.

United States Court of Appeals
Eighth Circuit.

Aug. 4, 1961.

J. A. Lane, Ogallala, Neb., for appellant; McGinley, Lane, Shanahan & McGinley, Ogallala, Neb., and John E. North, Omaha, Neb., on the brief.

Murl M. Maupin, North Platte, Neb., for appellee; Maupin, Dent, Kay & Satterfield, Thomas O. David and James J. Duggan, North Platte, Neb., on the brief.

Before JOHNSEN, Chief Judge, WOODROUGH and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought to recover damages for personal injuries sustained by plaintiff in a rear end collision which occurred just west of the city limits of Ogallala, Nebraska, on U. S. Highway No. 30 before six o'clock on the morning of February 25, 1960. The defendant's 1958 White Freight Liner tractor with Navajo trailer aggregating 42,500 pounds was being driven in a easterly direction by an employee, Lester Moses, when in fog and darkness it collided with the rear of a 1949 one-ton dump truck operated in the same direction by the plaintiff. There was diversity jurisdiction.

The plaintiff lived in a trailer court located on the north side of highway No. 30, and on the morning in question he got out about half past five o'clock intending to drive the dump truck into Ogallala. The truck's condition was described as "pretty good" or average for a truck of that age. It was dark at that time of the morning and the temperature was about fifteen degrees below zero. Plaintiff said that he started the engine with the lights off and that it was his custom to leave the lights off while trying to start the engine. While moving the truck out of a snow bank, he noticed that its taillight as well as the headlights were working. He said he drove south to the highway where he stopped, and after looking in both directions for oncoming traffic, he entered the highway and turned east driving in the proper right hand lane. It was dark and foggy, but plaintiff testified he could see in both directions for four or five blocks (about 1,200 to 1,500 feet) and that he saw no traffic on the highway. The black top highway, which was about 28 feet in width, was clear and dry, although there were several inches of snow on the ground and it was piled along the sides of the highway. He started down the highway in low gear, shifted into second gear as his speed increased and, according to his testimony, was travelling at 15 to 25 miles per hour when the collision occurred. He had not shifted into high gear. The collision occurred about two-thirds of a block or two hundred feet east of the point where he entered the highway. He was knocked unconscious and could remember nothing except the pain from the injuries suffered in the col-

lision. He could not remember the accident or any events immediately prior to it for a considerable time afterwards.

The driver of defendant's equipment, Lester Moses, had been an over-the-road driver for over twenty years and had driven in defendant's employment on the run between Denver and Chicago (the run on which the accident occurred) for ten years. The equipment in his charge was in good operating condition. He was driving with his headlights, fog lights, clearance and marker lights on as he approached Ogallala. He testified that he was regulating his speed according to the density of the fog he encountered. The tractor was equipped with a governor which limited the speed according to the gear in which he was driving as follows: 21 mph in 8th gear; 28 mph in 9th gear; 35 mph in 10th gear; 45 mph in 11th gear; and 56 mph in 12th gear. Shortly before the collision he shifted down to 9th gear, and was travelling at 27 or 28 miles per hour when he first sighted the dump truck through the fog and darkness. He testified that his lights would "show up" 150 feet in front of his tractor, but it depended on the density of the fog. The minute the dump truck appeared to him in the middle of the road, he applied his brakes and kept his eye on the dump truck all the time it was in view. He testified that the dump truck was parked in the center of the right hand lane; that it was not moving and did not move; that it was standing on the highway without lights; and he tried to turn to his left to avoid a collision but he was too late and the right front of his tractor struck the left rear of the dump truck.

The highway patrolman measured the skid marks on the highway identified as those of the defendant's vehicle to be 111 feet, 88 feet to the point of impact and 23 feet of skid marks beyond the point of impact to the rear of the trailer. The impact caused the plaintiff's dump truck to roll forward in a semi-circle for 220 feet. Following the impact its 1900 pound steel dump box became detached from the frame and came to rest about 145 feet from the point of the collision.

After the collision Moses walked along the 220 feet of tracks made by the dump truck to the point where it stopped. He saw the plaintiff thrust forward in the cab and held forcefully pinned against the steering wheel and dashboard. Considerable time and effort was required to extricate him from the cab and remove him to the hospital. Moses observed that there were no skid marks in the snow produced by the dump truck, only tire marks as if the truck had rolled to a stop, and the gear shift of the dump truck following the accident was set in neutral. Moses estimated that at the speed he was going he could stop his tractor within 85 feet under "ideal conditions," but stated "it would take longer to stop in that kind of weather."

Under proper pleadings the plaintiff claimed that defendant's negligence in the operation of its tractor was the proximate cause of the collision, which the defendant denied. The defendant counterclaimed against the plaintiff for the damage to its equipment, alleging the plaintiff's negligence was the proximate cause of the accident.

At the conclusion of all the evidence on the jury trial, plaintiff moved the court to instruct the jury that the defendant was guilty of negligence more than slight and could not recover on its counterclaim; that the negligence of the defendant was the sole proximate cause of the collision and defendant was liable for all damage suffered by the plaintiff as a matter of law; and that the jury should consider only the amount of damages. The plaintiff's only requested written instruction was as follows:

"If you find that defendant's driver, Lester Jack Moses observed the truck driven by plaintiff at a distance of 150 feet ahead of him and if you find that the said Lester Jack Moses was at said time driving defendant's truck at a speed of 30 miles per hour or less, and if you further find that there was no oncoming

traffic in the north lane of travel at the time Lester Jack Moses observed plaintiff's vehicle and thereafter which would interfere with defendant's said driver passing plaintiff on the north lane of traffic, then you are instructed as a matter of law that the failure of plaintiff to display a tail light on the rear of plaintiff's truck was not a proximate cause of the accident and in determining the proximate cause or contributing cause of the accident you will, therefore, disregard the testimony offered by the defendant that plaintiff failed to display a tail light on the rear of his truck and that the failure to display said tail light caused or contributed to the accident."

The court held that the defendant could not recover on its counterclaim and withdrew the counterclaim from the jury. It submitted the case to the jury in accordance with instructions under the Nebraska comparative negligence statute. The plaintiff took no exceptions to the instructions given by the court, but excepted to the court's refusal to give the above instruction.

The jury returned a verdict in favor of the plaintiff in the sum of $42,500 and judgment was entered against the defendant for that amount and costs. The counterclaim was dismissed. The plaintiff deems the amount awarded him inadequate and prosecutes this appeal to obtain reversal and a new trial on account of errors assigned.

He contends in substance that the court erred in refusing to direct a verdict in his favor on the issue of defendant's liability for all his damages; that there was no substantial evidence of any causative negligence on his part; that

the court should have instructed specially that the absence of a taillight on the dump truck was not, even if proven, a proximate cause of the accident; and that the court erred in receiving certain evidence concerning a taillight assembly that was found in the vicinity two weeks after the accident.

It is plain that the evidence adduced by the parties as to the physical facts is in sharp conflict. The only eye witnesses to the accident contradicted each other positively. The plaintiff swore he was travelling at 15 to 25 miles per hour with his lights on, while Moses testified that the plaintiff was stopped in the highway without lights in fog and darkness.[1]

■■ Upon the evidence as presented, we think the ruling of the court against the defendant on its counterclaim was permissible under the Nebraska decisions. The general rule, that it is negligence as a matter of law for a motorist to drive at such a rate of speed as to be unable to stop or avoid an obstruction discernible within range of his vision, was originally pronounced in Roth v. Blomquist, 117 Neb. 444, 220 N.W. 572, 58 A.L.R. 1473, where the court held that a motorist who drives so fast that he is unable to avoid a collision with an obstruction on the highway which he could have seen within the range of his lights was guilty of "negligence precluding a recovery in favor of the motorist for resulting injuries to himself or to his property." Although the opinion in the Roth case recognized exceptions to the absoluteness of the rule, it has been applied to deny recovery to a plaintiff driver whose headlights disclosed through the darkness an object in the road ahead and he was driving at such a speed that he was unable to avoid a collision with it.

1. Q. And when you saw the object, will you describe to us what it was that you saw? A. Well, it was dark and the minute I saw it I applied the brakes. I seen it was a truck.

&ast; &ast; &ast; &ast; &ast;

"Q. I don't care about going into the detail of that, but did you or did you not see any lights? A. No lights.

"Q. Neither forward or back? A. No.

"Q. During the time that it was within your range of vision, could you tell whether this object was moving or still? A. It looked to me like it was sitting still.

Guerin v. Forburger, 161 Neb. 824, 74 N. W.2d 870; Allen v. Kavanaugh, 160 Neb. 645, 71 N.W.2d 119; Pierson v. Jensen, 148 Neb. 849, 29 N.W.2d 625; Dickenson v. County of Cheyenne, 146 Neb. 36, 18 N.W.2d 559. In cases where the plaintiff is free of contributory negligence, the rule has been applied against the defendants to sustain a conclusion of ordinary negligence. Mabe v. Gross, 167 Neb. 593, 94 N.W.2d 12; Remmenga v. Selk, 150 Neb. 401, 34 N.W.2d 757; Allen v. Clark, 148 Neb. 627, 28 N.W.2d 439; Fairman v. Cook, 142 Neb. 893, 8 N.W.2d 315.

■ The courts have applied the rule to establish ordinary negligence of the party as a matter of law, but there is no reason to believe that the Nebraska Comparative Negligence Statute (Section 25–1151, R.S.1943) is not fully applicable in automobile rear-end collision cases. The cases cited and relied upon by appellant where the Roth rule has been applied are distinguished since there has been no issue of comparative negligence having been withdrawn from consideration by the jury. Mabe v. Gross, 167 Neb. 593, 94 N.W.2d 12; Stocker v. Roach, 140 Neb. 561, 300 N.W. 627; Hief v. Roberts Dairy Co., 138 Neb. 885, 296 N.W. 331. See Remmenga v. Selk, 150 Neb. 401, 34 N.W.2d 757. Where there has been substantial evidence that the negligence of the plaintiff contributed to the collision, the issue becomes one of fact and the comparative negligence statute provides that "the contributory negligence of the plaintiff shall be considered by the jury" (Section 25–1151, R.S.1943) and that provision is controlling. Our examination of the Nebraska automobile collision decisions convinces us that the court has always taken into account and considered the particular facts in each case, and we are not persuaded that any have been decided in disregard of the Nebraska comparative negligence statute. Remmenga v. Selk, 150 Neb. 401, 34 N.W.2d 757.

If this Court should hold that the defendant here was guilty of such negligence as a matter of law that the issue of comparative negligence should not have been given to the jury, it would go far to undermine the positive requirements of the comparative negligence statute. When the Roth doctrine has been applied by the Nebraska Supreme Court, it has done so on the theory that the party against whom it is applied is guilty of ordinary negligence as a matter of law, and where there has been an issue of comparative negligence it has been submitted to the jury. Remmenga v. Selk, supra.; Fairman v. Cook, 142 Neb. 893, 8 N.W.2d 315. See Huston v. Robinson, 144 Neb. 553, 13 N.W.2d 885.

■ In view of the direct conflict in the testimony of the witnesses, it certainly cannot be said that reasonable minds could not differ as to the conclusions that may be reached from the evidence here presented. Where reasonable minds may differ, the issue cannot be decided by the court but must be submitted to the jury.

■ In Guerin v. Forburger, 161 Neb. 824, 74 N.W.2d 870, 877, defendant was operating a truck at five miles per hour on the highway at night without lights when he was hit from the rear by a vehicle operated by Guerin. Plaintiff obtained judgment and on appeal the Supreme Court reversing with directions stated:

"Because of the factual situation involved we have held it was a question for the jury in cases involving an unlighted car stopping on the traveled portion of a highway, Haight v. Nelson, 157 Neb. 341, 59 N.W.2d 576, Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N.W. 623; the same as to a truck, Giles v. Welsh, 122 Neb. 164, 239 N.W. 813; and as to an oil transport, Fick v. Herman, 159 Neb. 758, 68 N.W.2d 622.

" * * * [W]e have also held that: ' * * * the rule that a motorist is guilty of negligence as a matter of law if he drives his automobile so fast that he cannot stop in time to avoid a collision with an object, within the area lighted by

the lamps on the automobile, has no application in those cases wherein reasonable minds might differ on the question of whether or not the operator exercised the care, caution, and prudence required of a reasonably careful, cautious, and prudent person under the circumstances of the particular situation.' Miers v. McMaken, 147 Neb. 133, 22 N.W.2d 422."

In Huston v. Robinson, 144 Neb. 553, 13 N.W.2d 885, 887, the injured plaintiff was a passenger in a reconnaissance car which was involved in a collision with another car that was standing on the highway obscured from vision by a cloud of dust. The plaintiff sued the owner (husband of the driver) of the stalled car for damages. The district court dismissed the case, but the Nebraska Supreme Court reversed on appeal and observed:

"We think that the driver of the reconnaissance car was negligent in failing to have his car under such control that he could stop it within the distance of his vision, and such negligence would undoubtedly be sufficient to bar a recovery in a suit by such driver as a matter of law. Even though such driver is negligent, we do not think the evidence shows as a matter of law that his negligence was the sole proximate cause of the accident  *  *  *.

"The only evidence in the record concerning the car being driven by defendant's wife is that it was standing on the pavement directly in the path of the reconnaissance car. Why it had stopped or how long it had been standing there is not apparent from the record. In reference to parking on highways, our statute says in part: 'No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway,  *  *  * when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such

highway;  *  *  * nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway.' "

The court then went on to say that

"In this connection we do not hold that the temporary stopping of an automobile on the proper side of a highway for a necessary purpose is negligence in all cases, the right to stop when the occasion demands being an incident to the right of travel. But in the present case there is no evidence indicating that it was not practicable to have moved the car off the highway and consequently the evidence is sufficient to show that there was a noncompliance with the statute. This is evidence of negligence, which the jury may properly consider.  *  *  *

"If, as contended by the plaintiff, the driver of defendant's car was negligent, under the circumstances shown, in parking or leaving the car standing on the paved portion of the highway, such negligence would be a direct contributing factor in the accident and afford the plaintiff a basis for recovery."

We think that in the case at bar plaintiff's parking or stopping his allegedly unlighted dump truck on the highway in the fog and darkness, if he did so, was more plainly contributory negligence than the action of the driver of defendant's car in Huston v. Robinson, supra., and there was at least equal necessity to have the jury consider the alleged contributory negligence of the plaintiff to mitigate the damages.

In Remmenga v. Selk, 150 Neb. 401, 34 N.W.2d 757, 765, the defendant was returning home early one morning and collided with the rear of a car parked on the highway. The injured plaintiff was a passenger in the parked car and sued on her first cause of action for damages for injuries to herself and on her second cause of action upon a claim for loss of consortium and expense assigned to her

by her husband, the driver of the parked car. There was a verdict for defendant on both causes. The trial court granted a motion for new trial as to the first cause for the plaintiff's injuries, but denied the motion as to the second cause on the assigned claim. Plaintiff appealed as to the ruling on the second cause of action, and defendant cross appealed as to the granting of the new trial on the first cause of action. The Supreme Court ruled that the defendant was liable to the passenger plaintiff as a matter of law under what we call the Roth rule, and since the negligence of the driver of the parked car was not attributable to her as a passenger, the granting of a new trial on her first cause of action was proper. But the court held that the trial court properly denied the motion for new trial as to the second cause of action, which was an assignment to her of her husband's claim, since that claim was subject to the defense of contributory negligence and that question is to be left to the jury.

Relative to his negligence, the Supreme Court said:

"And as stated in Renaud v. New England Transportation Co., 286 Mass. 39, 189 N.E. 789, 790: 'If as the jury could have found the truck was standing upon the right side of the travelled road and was without a rear red light, or other means adopted to warn travellers of its presence in violation of the statute, a finding of negligence on the part of the defendant was warranted. Woolner v. Perry, 265 Mass. 74, 163 N.E. 750; Lebowitz v. Bova, 274 Mass. 23, 174 N.E. 192; Tevyaw v. Hemingway Brothers Interstate Trucking Co., 284 Mass. 441, 188 N.E. 232.'"

The decision in the Remmenga case directly supports the ruling of the district court in this case.

According to the plaintiff, he was not parked but travelling at 15 to 25 miles per hour when the accident occurred. If that is taken as true, there would appear to be substantial evidence from which the jury could infer that the plaintiff entered the highway ahead and in full view of the defendant's equipment, and his failure to yield the right of way to the defendant was plainly negligence.

■■ The court properly instructed the jury without objection that the speed of a moving vehicle could be computed in feet per second as one and one-half times the miles per hour. According to that computation, the plaintiff was travelling at 22 to 37 feet per second, and he testified that he travelled only 200 feet on the highway before the collision, which would have taken from five to eight seconds. Moses testified that he was travelling at 27 or 28 miles per hour or 40 to 42 feet per second before and at the time when he sighted the dump truck on the highway, and immediately applied his brakes. Plaintiff testified that he could see along the highway four or five blocks (1,200 to 1,500 feet), but the tractor and trailer travelled less than (8 times 42 feet) 336 feet before the collision, and if the tractor had its headlight, fog lights, clearance and marker lights on, it would have been in plain view when the plaintiff entered the highway. It is true that he testified that he looked and saw no traffic, but whether or not he looked, or looked but failed to see approaching traffic that was visible, was a question for the jury. Certainly if he entered the highway ahead of defendant's equipment, in full view of it and so close to it that the defendant could not stop even when brakes were locked, it would justify a finding of some degree of causative negligence on his part by the jury. Kohrt v. Hammond, 160 Neb. 347, 70 N.W.2d 102; Kubo v. Fish, 152 Neb. 74, 40 N.W.2d 270.

We think that refusing to hold the plaintiff entirely free of causative negligence as a matter of law and submitting the question of plaintiff's contributory negligence to the jury under the comparative negligence statute was not clearly erroneous, but was a permissible ruling by the court under the Nebraska law and "we go no further than to determine that the trial court reached a permissible con-

clusion upon the basis of the law of its state." Kern v. Prudential Insurance Co., 8 Cir., 293 F.2d 251, 255; Homolla v. Gluck, 8 Cir., 248 F.2d 731.

As to the absence of a taillight on plaintiff's dump truck, the testimony of Moses was that, in spite of his utmost efforts, he could not stop the tractor and trailer in his charge within the distance intervening after he saw plaintiff's truck, and it is contended that if the dump truck had been properly lighted as required by statute, it could have been seen at a greater distance and the collision could have been avoided. Upon the issue so stated, it is clear that if in fact there was no taillight on the truck, the lack of it contributed to the accident. We do not find merit in appellant's argument that the absence of lights is irrelevant. It has been held irrelevant in cases where a motorist approaching another car within his range of vision sees the vehicle but is negligent in failing to make proper effort to avoid the collision by stopping, Stocker v. Roach, 140 Neb. 561, 300 N. W. 627, or where a motorist knowing of the presence of a vehicle ahead of him without lights is involved in a rear-end collision when the vehicle ahead of him stops. Hief v. Roberts Dairy Co., 138 Neb. 885, 296 N.W. 331. This situation is not present here since Moses said he put on the brakes immediately on sighting the dump truck but was unable to stop in time.

As to the alleged error in receiving evidence concerning the taillight assembly that was found after the accident, the plaintiff testified that the taillight on his dump truck was working when he started out from the trailer court that morning. Following the collision the whole taillight assembly was missing and a search for it was made in the area, but as stated, three to six inches of snow had fallen and the taillight assembly could not be found in the snow. Two weeks later, however, an investigator for defendant, who had kept up the search, found a taillight assembly with a double filament glass bulb lying in a borrow pit or ditch some forty-six feet east and thirty-nine feet south (fifty-three feet in a straight line) from the place of the collision. Before disturbing it, the investigator called a witness and had a photograph taken showing the assembly lodged in the dirt with the snow partly melted away so as to expose it to view. Although the back end of the dump truck was damaged so that the taillight assembly could not be placed exactly on the two bolts provided to hold a taillight assembly on the rear of the truck, there was testimony that "the section where the taillight assembly is pulled out, the bolts would fit right there."

The glass bulb in the taillight assembly was a standard double filament bulb in which one of the filaments gives a steady light when the headlights are on and the other filament lights only when the foot brake is applied. Defendant called as a witness a safety patrol officer, who lived in Ogallala and he knew the dump truck when he saw it and, about a week or ten days before the accident, he saw it being driven in Ogallala in the night time with its headlights burning. Objection to the question whether the taillight was burning was sustained and defendant made an offer to prove by the witness that the taillight was not burning at that time. The plaintiff testified that the taillight on his truck was working when he started out from the trailer court on the morning of the accident. The plaintiff testified that he had had trouble with the taillight so he had a new taillight put on, but it did not work properly. He attempted to have it fixed at a garage and testified that "the snow was bad at that time and would gather on the wire so I put a hose over them so they wouldn't break the wires" leading to the taillight. No other repairs were made on the taillight from the latter part of November until the accident in February.

When the double filament bulb was removed from the taillight assembly found after the accident, and electric current, for which it was designed, was applied to it, the filament that gives the steady

light when the headlights are burning would not work. The stop light filament in the bulb that burns when the foot brake is applied was working.

The court sustained plaintiff's objection and excluded the after found taillight assembly from evidence, so that the jury did not have it for consideration or the testimony of the witness, that the taillight was not working a week or ten days prior to the accident.

But the point made for appellant here is that the court committed error against him in that the court permitted the witness to testify that when the current was applied to the after discovered light bulb, the taillight filament inside the glass bulb was not working, but the stop light filament did work. We find no merit in his contention that the taillight assembly was not in the condition it was before the accident since it had suffered damage "during the two weeks time that it was kicked around in the ditch" in reference to the taillight bulb and its filaments. The bulb was made of thin and fragile glass which would easily break if it was subject to any substantial impact, but nothing had happened to break the glass, and as to the tiny (thinner than hair) filaments inside the bulb, they were more fragile than the glass and nothing had happened to the brake pedal stop light filament. The stop light filament was working properly. The taillight filament would not work, just as the truck's taillight filament would not work when the patrolman observed it a week or ten days prior to the accident. The taillight assembly apparently landed in soft snow and remained there out of sight until the snow melted. The double filament glass bulb looked no different than it must have looked before the accident. The assembly that came off the dump truck seems to have come off after the collision without any trace of damage which was caused by the wreck. It appeared from the testimony of the plaintiff that he was familiar with and had worked upon the taillight, and had had work done upon the taillight assembly before the collision and the assembly, that was found near the scene of the wreck, had been shown to his attorney before defendant's witness was interrogated concerning it. It would seem that if it was not the taillight assembly from the truck, some claim to that effect would have been made. On the cold record it is not clear that the circumstantial evidence concerning the taillight assembly should have been excluded. It tended to show that the taillight of the plaintiff's truck was not working when he was driving in darkness and fog on the highway.

The short of it is that plaintiff lost his truck's taillight assembly in a defined unfrequented area and, after searching that area, one was found there that had the same defect in the filament that his was shown to have had. There is no reason to think the assembly found at the scene had been thrown away. A light fixture is not thrown away because a light bulb is out. Any possible prejudice to the plaintiff, from the results of the examination of the taillight assembly, disappeared when the court entirely excluded the discovered taillight assembly itself and the fact that the taillight bulb was not working prior to the accident from the jury. Appellant made no motion to strike the testimony, that one of the filaments worked and the other filament did not, or request special instruction concerning that testimony or motion for mistrial on account of the admission of it. We find that no reversible error or prejudice to plaintiff occurred in connection therewith.

We conclude that the trial was in all respects without error prejudicial to appellant and the judgment is

Affirmed.